JAS. A. McCLURE *v.* W. D. EVARTSON and SAMUEL T. MOTTLEY.

1. SPECIAL AGENT. *Authority of.* Where an agent with only authority to contract for the sale of musical instruments, sold a piano, taking a note payable to his *principal*, therefor, and without authority sold and endorsed it, and the maker paid it to the endorsee, after he had been notified by the payee not to do so, it was *Held*, that the payee could recover of the maker, and the maker could also recover the money he had paid the endorsee.

2. RATIFICATION BY SILENCE. Silence will amount to ratification where the principal with knowledge of the transaction of his agent, fails for a reasonable time to dissent. Delay in suing after the principal has given notice of his refusal to approve the agent's act, raises no presumption of ratification.

---

FROM WILSON.

---

Appeal from the Chancery Court at Lebanon. GEO. E. SEAY, Ch.

S. S. GAUSE and W. H. WILLIAMSON for complainant.

JOHN C. FARR and JORDAN STOKES & SON for defendants.

DEADERICK, C. J., delivered the opinion of the court.

In February, 1879, complainant filed his bill in the chancery court of Wilson county against the defendants.

The bill charges that in the spring of 1876 he employed one Raymond, who has since left the State,

to make contracts for the sale of music and musical instruments upon commission; that in May or April, 1876, Raymond notified complainant that he had contracted with defendant, Evartson, for complainant to sell him a piano for $300 or $350, and that the same was delivered to said Evartson, and has never been paid for. The contract was for a sale on credit, and said Raymond took the note of Evartson at ninety days, and took his note, but does not know to whom it was payable, and the same is now in Evartson's possession wrongfully; said note was wrongfully and fraudulently in possession of said Evartson, having been delivered to said Raymond by him, and fraudulently disposed of by Raymond to defendant, Mottley; that said Raymond had no authority to take or dispose of said note; that Mottley and Evartson knew that Raymond had no such authority.

The bill further alleges, after Raymond transferred the note to Mottley, and before it was due, Evartson and Mottley were notified that Raymond had no right to take or endorse said note, and that Evartson and Mottley were notified not to pay said note.

The bill prays for a judgment against Evartson for the piano, and against Mottley for the note, or against both or either of them as seems just, etc., and for all relief general and special to which complainant may be entitled.

Evartson filed his answer as a cross-bill against complainant and Mottley. The answer admits the purchase of the piano from Raymond, and the exe-

cution of the note for $290, at six months, payable to complainant for the same, the said Raymond representing himself as agent for complainant. Respondent denies his liability to complainant, but says, on complainant's theory, Mottley may be. He denies that complainant told him, before the note fell due, not to pay it to Mottley, although he admits a conversation between them about the note, and that he, respondent, told complainant Mottley held the note. He denies fraud, etc. By way of cross-bill respondent recites the purchase of the piano of Raymond, who represented himself as agent of complainant, and gave his note payable to complainant for $290, date June 1, 1876, and due six months after date, and that soon thereafter he learned the note was in the hands of defendant, Mottley; that he informed complainant Mottley had the note in September, 1876, when McClure claimed the note was his property, and that he would write to Mottley, or see him, but said nothing to him about not paying the note at maturity; that about the time the note fell due Mottley presented it for payment, and respondent paid it, the said Mottley informing him that the complainant had made no demand or claim for the note. It is also alleged no steps were taken to get the possession of the note from Mottley, although complainant had been informed several months before its maturity that he held it, and by his gross laches complainant has lost his right, if he ever had any, to recover in this action. And if complainant has any right it is against Mottley, who got the money on the note, and he

should be held liable in the first instance, and if said Evartson should be held liable, he asks a decree over against Mottley.

Mottley answered both the original and cross-bills, and admits he knew nothing of McClure, nor in what manner Raymond was employed by him, if at all, nor does he know any thing of the contract of sale by Raymond to Evartson. He admits he purchased the note of Raymond, who claimed to own it; that it was bought and paid for in due course of trade. Respondent says his best recollection is the note was payable to Raymond, otherwise he is confident he would not have purchased it; that he carefully examined it, and he was satisfied from what appeared on the note, and from the representations of Raymond, he had a right to the note and power to dispose of it, and had no notice of any kind to the contrary. He denies liability, insisting he is an innocent purchaser in due course of trade for a valuable consideration.

McClure also answered the cross-bill, and insists he did notify Evartson in September not to pay the note, and he informed him Raymond's powers extended only to making sales and not to receiving money or discounting notes, and that the sale to Mottley was a fraud on him, etc.

Complainant was examined as a witness, showing a piano had been rented by him to Mr. Phillips, and this was the instrument sold Evartson, so that he did not know of the sale for several months after it was made, and not till after the transfer of the

note by Raymond. His bill seeks to hold Evartson for the value of the piano or for the note, and Mottley for the note, but the prayer for general relief and the facts proved are sufficient to sustain the relief given by the chancellor. He held Evartson liable to complainant for the value of the piano, and on the cross-bill he held Mottley liable for the amount of the note to Evartson, the same having been wrongfully collected by said Mottley.

From this decree against them respectively Evartson and Mottley have appealed.

The Referees recommend a reversal of said decree, and a dismissal of the bill, and complainant has excepted to their report.

Complainant's bill and his evidence are in some degree conflicting, resulting no doubt from the bill having been prepared in his absence, and to some doubt as to his legal rights under said allegations. But there are sufficient allegations to the effect that Raymond without authority sold Evartson a piano for $290 belonging to complainant, and took a note for $290, which he transferred to Mottley, and that Evartson paid it when it fell due to Mottley, that both Mottley and Evartson had notice that Raymond had no right to transfer the note, and Evartson was notified not to pay it, and Mottley not to collect, that the piano or money for it rightfully belonged to complainant, and upon these being established by the evidence, we think the decree should be sustained. Neither of the parties swore to his bill or answer, and although Evartson denied very

positively in his answer and cross-bill that the complainant instructed him not to pay the note to Mottley, yet in his testimony he says that McClure said to him in the September conversation, "don't you pay the note," to which he replied, "I shall do it, sir." This contradiction is also probably due to the license the lawyer felt authorized to take in preparing the defense, or his information of the facts. Evartson said on his return home, after this conversation, he went to see Mottley, and told him of the trouble about the note in rather irreverent language, and Mottley replied they might all go to the place where bad people go, "he was going to have his money." So Evartson seeing the alternative, some time afterwards, when the note fell due, paid the money and lifted the note, which, he says, was lost or mislaid, and he has been unable, after diligent search, to find it, and to the best of his knowledge and belief it was payable to complainant.

Complainant deposes that he gave notice to Evartson that he must not pay the note to Mottley, and that he wrote to Mottley not to receive it, etc. Mottley denies in his answer that he received such a letter, but he was not examined as a witness. No doubt Evartson told him all complainant had said to him, and even if he had no notice by letter he had through Evartson.

We have no hesitation in holding Raymond was a special agent of complainant to contract for the sale of musical instruments, but had no authority to take notes payable to complainant, and endorse and

McClure *v.* Evartson and Mottley.

transfer them. Evartson and Mottley traded with him upon his own representations, and Mottley, to whom he was perhaps a stranger, took his assignment of the note endorsed by him, which, on its face, was payable to McClure. Nor has there been such laches in bringing suit as to repel complainant. If he had failed after knowledge of the facts for two years, to notify the parties concerned, there would have been grounds for holding that his long silence raised a presumption of acquiescence in all the acts of the supposed agent. But before the note fell due, and as soon as he heard of these various transactions, he gave notice to Evartson not to pay, and by letter, at all events by information communicated through Evartson, Mottley knew of the trouble in regard to the note, and declared his determination to have his money notwithstanding.

The case in which silence will amount to ratification is. where the principal, having knowledge of the transactions of his agent, fails within a reasonable time to express his dissent: Story on Ag., sec. 255, *et seq.*

It is failure to express dissent to the act done by the agent, or supposed agent, within a reasonable time after knowledge of the facts, that raises the presumption of ratification, not the forbearance to sue immediately after such notice has been given.

We think the facts alleged in the bill, and the evidence sustaining those facts, entitle complainant to the decree rendered by the chancellor.

The complainant stated he was willing to take

the piano back or the sum of $290, which was its price, and less than it was worth. The instrument was withheld, and complainant is entitled to a decree for its value, and interest, and as Mottley wrongfully received the amount of $290 from Evartson, Evartson should have a decree over against him for the amount.

We are of opinion, therefore, that the exceptions to the report should be sustained, the report set aside, and the chancellor's decree affirmed.