STAINBACK *v.* JUNK BROS., ETC., CO.

*(Nashville.* March 5, 1897.)

1. CORPORATIONS. *Ratification of unauthorized issue of bonds.*

The ratification of an unauthorized issue of bonds will be presumed in favor of innocent third persons, without any direct or formal act of confirmation, where the corporation has for a considerable time continued to use such illegal bonds, as collateral security on its renewal and other notes, releasing thereby other personal security thereon, under such circumstances as to render it incredible that the facts concerning the original issue were not fully known at the time to the corporation, its officers, directors, and stockholders. *(Post, pp. 309–315.)*

2. SAME. *Same. Notice of illegality of act.*

The knowledge of stockholders and directors that an issue of bonds in the name of a corporation was unauthorized, such as is essential to ratification by acquiescence, may be shown by circumstances that raise a reasonable inference that they knew of such illegality at the time of their acquiescence. *(Post, pp. 309, 310.)*

3. CHANCERY PLEADING AND PRACTICE. *Innocent purchaser.*

Objection will not be entertained, when made for the first time in this Court, to the sufficiency of a plea of innocent purchaser incorporated in an unsworn answer upon which issue was joined and proof taken without exception in the lower Court. *(Post, pp. 315–317.)*

Code construed: §§ 6138, 6182, 6183, 6210, 6244 (S.), §§ 5071, 5115, 5143, 5177 (M. & V.); §§ 4328, 4372, 4400, 4432 (T. & S.).

Cases cited and approved: Harris *v.* Smith, *ante*, p. 286; Rhea *v.* Allison, 3 Head, 177; Jarman *v.* Farley, 7 Lea, 141; Mulloy *v.* Paul, 2 Tenn. Chy., 155.

4. SAME. *Assignment of error bad, when.*

An assignment of error will not be considered in this Court, which raises a question not made in the pleadings or noticed in the evidence in the Court below. *(Post, p. 319.)*

5. Assignments for Creditors. *Assignee not an innocent purchaser.*

The assignee for creditors of a corporation is not in the position of an innocent purchaser as to bonds of the corporation embraced in the assignment and attacked for fraud, in their issue, and the creditors who come in under the assignment are entitled to only such rights as the assignee has. (*Post, pp. 315, 318.*)

6. Same. *Registration.*

An assignee for creditors of a corporation is neither a creditor nor a *bona fide* purchaser within the meaning of the registration laws, nor are the beneficiaries, under the assignment, mortgagees for value, but mere volunteers. (*Post, pp. 318, 319.*)

Case cited and approved: Nashville Trust Co. *v.* Bank, 91 Tenn., 336.

7. Same. . *Description of property conveyed.*

An assignment for creditors of a lumber and manufacturing corporation, conveying its plant "and all appliances used in operating its plant and factory," passes a mill building situated on leased premises four hundred yards from the company's main mill, and used in connection with, and as part of, the plant. (*Post, pp. 319, 320.*)

8. Same. *Creditors' rights under.*

Creditors of a corporation, who come in under an assignment for creditors, can work out their rights against third persons only through the assignee and under the assignment to him, and, if he is estopped to question the validity of bonds secured by a mortgage upon the corporate property, or takes the property subject to the mortgage, they are similarly affected. (*Post, pp. 320, 321.*)

9. Action. *By one for himself and others.*

If suit brought by one person on behalf of himself and others in the same right fails as to the party bringing it, it will be dismissed also as to those on whose behalf it was brought, and who may have intervened thereunder. (*Post, pp. 321, 322.*)

10. Mortgages and Deeds of Trust. *Of corporation to secure bonds, valid when.*

The mortgage of a corporation to secure an issue of bonds, which conveys no more property than was reasonable and necessary

to secure the amount thereof, is not void because it reserves possession and delays sale for ten years, and provides for a limited liability of the trustee.   (*Post, pp. 321, 322.*)

---

## FROM DAVIDSON.

Appeal from Chancery Court of Davidson County. THOS. H. MALONE, Ch.

A. N. GRISHAM and T. M. STEGER for Stainback.

PITTS & MEEKS for Junk Bros., etc.

JOHN RUHM & SON for John Streight.

JOHN M. GAUT for American National Bank.

JAMES S. PILCHER for Union Bank and Trust Company.

WILKES, J.   This is a bill to have $50,000 of bonds, purporting to have been issued by the Junk Bros. Lumber & Mfg. Co., invalidated, and to have the trust deed made to secure the same, declared illegal and void for want of corporate authority to make it, for fraud, and defects apparent on the face of the trust.

The Chancellor denied the relief prayed, and the Court of Chancery Appeals affirmed his decree, and the cause is now before us on appeal of the assignee of the company and general creditors.   The

Court of Chancery Appeals held that the original issue of the bonds was not authorized by any regular corporate action, but that such issuance was afterwards ratified by the company and its officers, and that the bank holding the bonds, was an innocent holder for value, and that the bonds and mortgages were valid and binding.

A number of errors are assigned to the action of the Court of Chancery Appeals, but they may be embodied in a few leading points: (1) That there was no ratification by the company and its officers; (2) that there was no sufficient plea or defense of innocent purchaser; (3) that the bank was not in fact an innocent purchaser and holder of the bonds, but was an original contracting party with the company for the bonds, and they were taken by it for pre-existing debts.

Upon the question of ratification the Court of Chancery Appeals reports that S. C. Junk, J. H. Vaughn, and A. B. Spain, three of the stockholders and directors, authorized and assented to the issuance of the bonds and mortgages when made. Soon afterwards, in August, 1891, Mr. Junk learned the facts, and took no steps to undo what had been done; that Streight knew all about the bonds and mortgages, and by proxy was present when they were directed to be issued. The two remaining stockholders were Ross and Jefferson, each owning a small amount, about $1,000 of the $109,000 stock. Stainback and Baird became stockholders after Feb-

ruary, 1892, but neither of these parties testifies, and the Court of Chancery Appeals reports that it does not expressly appear from proof whether they knew of the bonds or mortgage or not, but, under the facts, it must be presumed that they did know.

The Court of Chancery Appeals find that the circumstances were such that Ross and Jefferson had full opportunity to know of the transaction, and, in view of the length of time that elapsed after the bonds were issued before the bill in this cause was filed, and the conduct of the business during that time, the presumption was they did know, and it was incumbent on them, under the circumstances, to show that they did not know, if such was the fact; that Stainback and Baird came into the company after the resolution to issue the bonds and make the mortgage had been put upon the books of the company, and this, together with the general knowledge existing among the stockholders, would justify the inference that they knew of the matter, as well as the further fact that they renewed many of the debts on the faith alone of these bonds and mortgages. It has been held that ratification may be shown by such circumstances as raise a reasonable inference that the contract to be ratified is within the knowledge of those who choose to inquire, and who have full opportunity and means of inquiring. Jones on Corp. Bonds and Mort., Sec. 286; 2 Cook on Stockholders, Sec. 731, note 3.

This does not contravene the general doctrine that,

to make a case of ratification, the parties to be affected by it must have full knowledge of all the facts concerning the matter to be ratified, but finds that such knowledge did exist under the facts and circumstances, as found.

In 2 Morawetz on Private Corp., Sec. 633, it is said: "The question whether an unauthorized act has been ratified by the members of a corporation is a question of fact, to be decided by a jury in a Court of Law. It is not necessary, for this purpose, that an act of ratification be shown on the part of every individual stockholder, but proof of circumstances from which the Court or jury can reasonably infer that the act in question was generally known among the stockholders, and was acquiesced in by them, will constitute at least *prima facie* evidence of ratification. In many cases knowledge may be presumed from circumstances, and assent may be implied from silence or failure to act." See, also, 4 Thomp. on Corp., Secs. 5298–5314, 5315.

As before stated, this concedes the general rule of law that there must be full knowledge and an intention to ratify before it can be held to have been effected, and the Court of Chancery Appeals, without denying or avoiding this principle of law, hold that the facts and circumstances charge the company with such knowledge as is sufficient to make out estoppel and ratification.

In this connection, the Court of Chancery Appeals consider the question of ratification by receiving or

securing a loan from the defendant bank and apply-
ing the money to its debts, and the discount by the
bank of new paper on the credit of the bonds.

It appears that the bonds and mortgage were
delivered July 20, 1891. Four days thereafter,
the Junk Bros. Lumber & Mfg. Co. discounted
six of its notes with the bank, aggregating $9,660,
in order to take up certain acceptances which John
Streight had previously undertaken for the company,
and which had been indorsed to the bank. The
Court of Chancery Appeals report that it was
mainly on account of these acceptances that the
bonds were issued and mortgage made, and that the
notes to take them up were discounted on the faith
of the bonds and mortgage, and pursuant to the
plan agreed on when the bonds and mortgage were
created. When first discounted, they had also the
personal indorsement of S. C. Junk, and he was
amply solvent. These notes were renewed from time
to time, and in different shapes, and many of them
were still outstanding when this bill was filed. It
appears that on February 5, 1892, a new board of
directors took charge of the affairs of the company,
of which Baird was president, and Stainback secre-
tary. This new board, in making renewals, dropped
the name of S. C. Junk as surety, and after that
time there was no other security for the loans ex-
cept the bonds and mortgage. Streight's name was
dropped from the paper when the new notes were
first executed, under the bond and mortgage arrange-

ment.   It thus appears that the new board of directors, through its managing officers, not concerned in the original transaction, recognized the arrangement and adopted its benefits, inasmuch as they gave no other security for their renewals than the bonds and mortgage.   In addition to these notes, $22,000 of other notes which were in existence at the date of the bonds and mortgage transaction, were renewed from time to time, and were secured alone by the bonds.   Also a large amount of new paper of third persons was indorsed by the company and discounted to the bank under the agreement that the bonds and mortgage were to inure also to their security, amounting in the aggregate to $21,141.06, as found by the Court of Chancery Appeals.

The Court of Chancery Appeals finds that these different transactions were from time to time conducted by the company and for its benefit, and it reports that it would be incredible that transactions involving such amounts, so many items, and extending over such a length of time, could be conducted without the knowledge and sanction of the company and its directors and stockholders; and they report that the company received and adopted the fruits of these transactions, and that this constitutes a ratification by the company of the former transaction.

In 4 Thomp. on Corp., Sec. 5286, it is said: "It is a principle of law universally acquiesced in and constantly applied, that a corporation, like a

natural person, may ratify, affirm, and validate any contract made or act done in its behalf, which it is capable of making or doing in the first instance, and that such ratification may take place by conduct *in pais*, and that no formal vote or resolution of the board of directors or the body of the shareholders is necessary to that end; that such conduct may consist either in affirmative action or in a failure to act—that is, in passive acquiescence; that it may be the conduct either of a managing agent or of the board of directors or the body of the shareholders—in short, the conduct of the agent or agency which might have authorized the act in the first instance, or of the general constituent body; and that when a ratification has thus taken place, it is equivalent to an antecedent authority, and estops the corporation from subsequently disavowing the act so ratified. In this manner not only unauthorized acts of agents, but also the acts of *de facto* officers, and even those of officious intermeddlers, may become the acts of the corporation by adoption." See, also, Secs. 5287, 5291, 5292, 5293, 5298, 5303.

Again, in Sec. 5308 it is said: "It is a sound view, at least in so far as the question affects the rights of third persons, that the directors of corporations are in law conclusively presumed to know its connections, its business, its receipts and expenditures, and all the general facts which go to make up that condition and business as shown by the entries on its regular books. The reason of this is that it is

their duty to know these things in the exercise of their official functions. The doctrine is one favored in public policy, essential to the safety of third parties in their dealings with corporations, and to the protection of the stockholders interested in the welfare and safe management of corporations.''

The Court of Chancery Appeals find, as a fact, that the corporation was not insolvent when the original transaction was made, so that we need not consider this aspect of the case. Upon a petition to rehear upon this point, after reviewing the evidence and making a painstaking analysis of the figures, the Court concludes that the proof does not make out a case of insolvency.

Another question presented is whether the bank is entitled to the status of a *bona fide* purchaser or holder of the bonds. The Court of Chancery Appeals find that it had no actual knowledge of any infirmity connected with the bonds and mortgage, and that upon the faith of them it released Streight, a solvent party, on about $9,660 of debts held by it, and also, upon the faith of the bonds and mortgage alone, discounted new paper to the amount of $11,481.06. It also afterwards released S. C. Junk upon his indorsement of $—— of the company's paper, looking alone to the bonds and mortgage for security, and this at a time when the affairs of the company were getting in a doubtful condition.

It is insisted, however, that the bank cannot

rely upon the defense of innocent purchaser, because it is not properly and sufficiently raised in the answer or pleading. In considering this question, on a petition to rehear (the Court, upon the original hearing, having held that the defense was not properly raised), the Court adhered to its original holding that the defense was not sufficient, as made, but the Court was of opinion that the defects were waived by not excepting to the answer and by going to proof upon the merits without objection. That Court was of opinion that, treating the matter as in avoidance, unless exceptions are filed to such matters of avoidance set up in the answer, they are treated as being put at issue, and when the case thus proceeds to proof, objection will not be heard in the appellate Court, for the first time, as to the sufficiency of the plea or answer. If complainant fail to reply to a plea or except to an answer, their validity and sufficiency is confessed, and, under our practice, failure to reply is the same thing as if an issue was tendered to the truth of the plea or answer, passing by its sufficiency. After the matter set up in a plea or answer has gone to issue, its validity and sufficiency cannot further be questioned, but only its truth. Daniel's Chy. Prac., ·* 696–7.

Under the Code (Shannon), §§ 6182–3, when there is no answer or plea filed, the complainant (except in cases of infants and persons of unsound mind) may proceed as if the allegations in the bill had

been put in issue by answer not sworn to, with the right to set for hearing forthwith.

The question here presented has already been considered and passed upon by this Court in a recent case affirming the holding of the Court of Chancery Appeals at the present term, in the case of *Harris* v. *Smith*, *ante*, p. 286, citing Code (Shannon), §§ 6138, 6244, 6210; Gibson's Suits in Chy., Sec. 337; *Rhea* v. *Allison*, 3 Head, 177; *Jarman* v. *Farley*, 7 Lea, 141; 1 Dan. Chy. Prac., marg. p. 679; *Mulloy* v. *Paul*, 2 Tenn. Chy., 155.

It is said that the general rule should not prevail in this case, because the answer is not under oath, the oath having been waived, and therefore it could not be excepted to. Without deciding whether an exception will lie to an unsworn answer on account of insufficiency, it is enough to say that such answer, if not excepted to, is treated as a pleading, and having at least as much force and effect as a pleading in the law Courts, where a replication of *bona fide* innocent purchaser is not required to be sworn to.

Under the Code (Shannon), §§ 6132, 6138–6244, matters set up in the answer by way of defense or avoidance, are at issue unless exception to the answer is taken, as much so as if replication had been filed, and the fact that the answer is not sworn to, in cases where the oath is waived, can make no difference. It is proper to note, in this connection, that the original bill in this case was really a bill

Stainback *v.* Junk Bros., etc., Co.

of interpleader on the part of the assignee under the mortgage. In response to its call to interplead, the company and Streight, the latter claiming to be a creditor, filed cross bills attacking the bonds and mortgage to secure them, and averred, in substance, that the bank had paid no money or other valuable thing for them, and was not an innocent holder. Replying to these cross bills, the bank answered, repeating statements made in its answer to the original bill, in which it claimed to be an innocent holder. The matter was thus fairly presented on an issue raised by the cross bills, and, even if there had been no answer, the complainants in the cross bill must have proven the allegations in their cross bill. But we are also of opinion this is not a case in which a technical plea of innocent holder is necessary. The assignee in this case is not himself an innocent, but a voluntary, holder under the assignment, taking such rights only as the company could confer upon him by the assignment, and no more. The creditors who come in under the trust assignment can take only such rights as the assignee has. The assignee has the right to the property conveyed to him only so far as the company could convey it, and subject to such rights as have been fixed upon it prior to the assignment to him. It does not appear that the other creditor's debts antedate the bond transaction and the mortgage then made, so they must be presumed to have extended credit with knowledge of the existence of the mortgage and bonded debt.

Hence, the assignee or creditors cannot set up any injury arising out of the creation of the bonded debt after they became creditors.

It is assigned as error that the trust assignment is inoperative as to the lands in Cheatham County, because it is not registered there. This question is not raised in the pleadings. No proof was taken upon it. The Court cannot know whether it is registered there or not, and if it knew, it would make no decree in regard to it in the absence of pleadings. The assignee is neither a creditor nor a *bona fide* purchaser in the meaning of the registration laws. Neither are the beneficiaries, under the general assignment, mortgagees for value, but mere volunteers. *Nashville Trust Co.* v. *Bank*, 7 Pick., 336. The creditors claim through the trustee, and can have no higher rights than he. They claim under the assignment and not as general creditors.

It is also assigned as error that the Junk company owned a mill on land leased from the cooperage company, distant about four hundred yards from the mill on the land to which the company had title, and it is insisted this does not pass under the assignment. The assignment uses this language: "And all the machinery, tools, etc., in the building owned by the party of the first part, and all the appliances used in operating its plant or factory."

The Court of Chancery Appeals finds that this mill, on leased land, was part of the plant, and run by the company, and that Court was of opinion it

was intended to be, and was, in fact, embraced in the terms of the mortgage, and we concur with them in that opinion.

John Streight was made a defendant, and filed a cross bill attacking the deed of assignment on many grounds, some twelve in number, six of which are embraced in the assignments already considered. We have examined the others in connection with the main matters of contention. The Court of Chancery Appeals find that it does not appear that Streight is a creditor and has any status in a Court under his cross bill; second, that Streight was notified of the stockholders' meeting, and was present by proxy and acquiesced in the issuance of the bonds and execution of the mortgage, and that, as a result, he was released of $9,660 of the acceptances of the company, and thus having full notice and knowledge, and having received the benefits, as stated, he was estopped to attack the bonds and mortgage. Other parties sought to come in under this cross bill of Streight's, but while they filed petitions with that view, there was no order making them parties, although motions to strike out their petitions were disallowed. The Court of Chancery Appeals was of opinion that the parties who attempted to come in under the cross bill must abide the result declared against the cross complainant under the state of the pleadings, citing *Burt* v. *British Assn.*, 4 DeGex & Jones, 158; 1 Dan. Chy. Prac., 244, 236, 237; and in this conclusion we concur.

In the case of *Burt* v. *English, supra,* the bill was filed by one shareholder, on behalf of himself and other shareholders, to hold the managers of the company personally liable for certain transactions. Complainant was himself a director, and, in the opinion of the Court, was estopped from objecting, because it was his duty to know what the board had done. The Court held that, although he sued for other shareholders, as well as himself, and although, in the language of the case, ''there are a hundred who wish to institute a suit and who are entitled to sue,'' still, if they sue by a plaintiff who has personally precluded himself from suing, that suit cannot proceed.    Page 178.

Neither Streight nor Atkinson, nor the other parties who attempted to come in under Streight's cross bills, have made proof of their claims.    Besides, they can only work out their rights through the assignee, Stainback, and under the assignment to him, and if he is estopped, or takes the property subject to the bond mortgage, the creditors must do likewise.    They must take what the trustee has to give them, or repudiate the trust altogether, which they do not seek to do.

It is said the bond mortgage is invalid because it limits the trustee's liability to a degree less than that imposed by law; reserves possession for ten years; provides for a successor only on application of one-tenth in number of the bondholders; authorizes the property to be sold as a whole and free

from the right of redemption; provides that in case of sale no injunction shall be applied for; and the trustee is not required to act unless indemnified against cost or loss, and the deed embraces ·property consumable in its use, to wit, timber land.

The Court of Chancery Appeals set out *in extenso* the facts bearing upon each of these assignments, but express no opinion as to the law, and whether the assignments are well made or not, inasmuch as they hold that the cross complainants are not properly before the Court so as to raise these issues. It does not appear, as before stated, that Streight or Atkinson are, in fact, creditors, and it nowhere appears that they were such when the bond mortgage was made. Nor does it appear that the property conveyed was more than sufficient to secure the bonds, so as to raise the question of excessive delay, and we are of opinion that the provisions of the deed as to liability of the trustee are not such as to render the deed void *per se*, even if the parties were properly before the Court presenting the question.

Without going into detail over each of these assignments, it suffices to say we think none of them are well taken, even if the petitions were properly before the Court.

Upon the entire case we are of opinion that there is no error in the decree of the Court of Chancery Appeals, and it is affirmed with costs.