### IN THE

# SUPREME COURT OF TENNESSEE

### FOR THE

## MIDDLE DIVISION

## DECEMBER TERM, 1920.

MEMPHIS LUMBER COMPANY *et al. v.* SECURITY BANK & TRUST COMPANY.

(*Nashville.* December Term, 1920.)

1. CORPORATIONS. Use of corporate funds to pay stockholder's note held corporate act and funds not recoverable.

Where the maker of notes owned practically all the stock of a corporation and dominated its affairs, and payments of corporate funds on the notes to a bank discounting the notes were known to everybody connected with the corporation and expressly ratified at a stockholders' meeting, the application of the funds to the notes was a corporate act, and, though *ultra vires* the funds were not recoverable by the corporation's trustee for creditors, though the bank had notice of the facts, especially where it surrendered the notes, which bore the indorsement of a solvent indorser. (*Post, pp.* 139-142.)

Cases cited and approved: Water Co. v. Bank, 123 Tenn., 372; Bank v. Bank, 132 Tenn., 157; Whaley v. King, 141 Tenn., 1; Civil Service Inv. Ass'n v. Thomas, 138 Tenn., 77; Cartwright v. Dickinson, 88 Tenn., 476; Vance & Kirby v. McNabb Coal Co., 92 Tenn., 47; Jennings, Neff & Co. v. Ice Co., 128 Tenn., 231.

136

2. CORPORATIONS. Cannot sue to avoid ultra vires transaction fully executed.

Where there has been an *ultra vires* conveyance of real property or transfer of personal property fully executed and the property delivered the corporation cannot sue to avoid the tansaction and recover the property. (*Post, p.* 142.)

Cases cited and approved: St. Louis, Vandalia & T. R. Co. v. Terre Haute & Indianapolis R. Co., 145 U. S., 393; Rogers v. N. C. & St. L. Ry., 91 Fed., 299.

3. CORPORATIONS. Court will neither assist in disaffirming ultra vires executed contracts nor entertain suits in affirmance.

The court will neither entertain suits in affirmance of *ultra vires* contracts of corporations nor aid the parties in disaffirming them when executed. (*Post, p.* 142.)

Cases cited and approved: Marble Co. v. Harvey, 92 Tenn., 115; Tennessee Ice Co. v. Raine, 107 Tenn., 151; Barrow v. Turnpike Co., 28 Tenn., 304.

4. CORPORATIONS. Trustee for creditors not entitled to sue to recover ultra vires payments.

As a corporation could not sue to recover payments of corporate funds on notes of its principal stockholder when ratified by the stockholders, the trustee for the benefit of its creditors was likewise precluded from such relief. (*Post, pp.* 142-144.)

Cases cited and distinguished: Nashville Trust Co. v. Bank, 91 Tenn., 336; Stainback v. Junk Bros., etc., Co., 98 Tenn., 306. 306.

5. CORPORATIONS. Subsequent creditors not entitled to have diversion of corporate assets rescinded.

Creditors of a corporation becoming such after a diversion of corporate assets to the use of the principal stockholder are not entitled to relief in absence of proof that the diversion was with any idea of defrauding them. (*Post, pp.* 144, 145.)

Cases cited and approved: Dillard v. Dillard, 22 Tenn., 41; Nicholas v. Ward, 38 Tenn., 323; Hickman v. Perrin, 46 Tenn., 135; Vance v. Smith, 49 Tenn., 343; Graham v. La Crosse & M. R. R. Co., 102 U. S., 148.

FROM SHELBY.

Appeal from the Chancery Court of Shelby County.—
Hon. F. H. Heiskell, Chancellor.

Harsh & Harsh and Francis Fentress, for appellants.

Boyd & Bejach, for appellee.

Mr. Justice Green delivered the opinion of the Court.

From a decree dismissing the bill the complainants have
appealed to this court.

The Memphis Lumber Company was a corporation in
Memphis capitalized at $25,000. $12,500 of the stock was
owned by R. E. Lee Wilson, and the other half of the stock
was owned by Whitmel Kearney and members of his fam-
ily. On June 15, 1915, Kearney bought Wilson's stock
and gave for the stock four notes for $4,800 each. The
notes were signed by Whitmel Kearney and two of his
sons. Wilson discounted the notes to defendant Security
Bank & Trust Company. Two of them were afterwards
paid.

On July 8, 1918, the Memphis Lumber Company made a
general assignment to V. R. Smith as trustee for the bene-
fit of all its creditors. Upon investigation the trustee be-
came convinced that the two Wilson notes above referred
to which were paid, were paid with funds of the Memphis
Lumber Company, and that the defendant bank, holding
the said notes, received such payments under circum-
stances sufficient to charge it with notice that the notes
were being paid with funds of the corporation. This suit

was accordingly brought by the trustee under the assignment, the Memphis Lumber Company joining him as complainant, for the recovery of the money received by the bank in payment of the two notes on the theory that it was a trust fund which the bank took with notice of its origin.

The payments made to the bank on account of these two notes, according to complainants' proof, were with checks payable to the lumber company and indorsed by the lumber company and sometimes with the lumber company's own check. It may be conceded, therefore, for the purposes of this case, that the bank took these payments under such circumstances as to put it upon notice that the notes were being paid with funds coming from the corporation.

Whitmel Kearney after the purchase of Wilson's stock was the practical owner of all the stock of the Memphis Lumber Company. A smaller amount was held by his sons, his daughter and another connection, the latter being the bookkeeper. Whitmel Kearney dominated and controlled the affairs of the institution.

When money was withdrawn for a payment upon the Wilson notes, it was charged on the books of the corporation to "special account—Wilson notes." Later the special account was carried over to "surplus." Finally the "surplus" account was credited with the amount paid on the notes, to-wit, $12,341.58, and this amount charged to the account of Whitmel Kearney. These transactions seem to have been known to everybody connected with the corporation, and finally the foregoing system of bookkeeping

was expressly ratified and approved by a resolution passed at a stockholders' meeting. It seems also that there was an effort to declare a dividend by the corporation sufficient to cover the amount used by Whitmel Kearney for the payment of the two Wilson notes. It is said, however, by the complainants that the corporation was insolvent, and no dividend was justified.

It thus appears that the corporation was fully cognizant of this use of its funds by Whitmel Kearney and ratified and approved his course. So the application of the corporate funds to the Wilson notes was a corporate act in effect. Although the loan or advance to Whitmel Kearney for the purpose stated may have been an *ultra vires* act, it was none the less the act of the corporation.

The facts of this case differentiate it from several cases previously decided by this court which are relied on by the complainants. It will simplify the controversy to refer to these former cases and distinguish them at the outset.

The present case is not one where corporate funds were abstracted by a corporate employee or officer without authority from the corporation. (*Water Co.* v. *Bank,* 123 Tenn., 372, 131 S. W., 447; *Bank* v. *Bank,* 132 Tenn., 157, 177 S. W., 74), and that line of cases is therefore not in point.

This is not a case where the corporation has undertaken to buy in shares of its own stock. Whitmel Kearney bought the Wilson stock for himself, and gave the notes of himself and his sons for this stock. The purchase was clearly on his individual account, and not on account of

the corporation.   Therefore there is no question here involved of a decrease of the capital stock of the corporation. *Whaley* v. *King,* 141 Tenn., 1, 206 S. W., 31, *Civil
Service Inv. Ass'n* v. *Thomas,* 138 Tenn., 77, 195 S. W.,
775, and *Cartwright* v. *Dickinson,* 88 Tenn., 476, 12 S. W.,
1030, 7 L. R. A., 706, 17 Am. St. Rep., 910, accordingly are
not controlling.

This is not a suit by existing creditors of the corporation to recover its assets unlawfully diverted to stockholders.   This is the suit of the trustee under the general
assignment.   The corporation itself is really not a proper
party to the suit, and its connection may be disregarded.

The suit is simply one by the trustee, and it follows,
owing to the nature of the trustee's right and title, which
will hereafter be discussed, that *Vance & Kirby* v. *McNabb
Coal Co.,* 92 Tenn., 47, 20 S. W., 424, and *Jennings, Neff
& Co.* v. *Ice Co.,* 128 Tenn., 231, 159 S. W., 1088, 47 L. R.
A. (N. S.), 1058, are not determinative.   These were suits
brought by creditors to recover corporate funds distributed among stockholders.

We think it clear that the Memphis Lumber Company
itself could not maintain this suit to reclaim from defendant bank the funds paid to said bank on account of the
Wilson notes.   These funds were advanced to Whitmel
Kearney with the acquiescence and consent of all parties
connected with the corporation, and the corporation afterwards formally ratified the proceeding.   The defendant bank held these notes bearing the indorsement of R. E.
Lee Wilson, a perfectly solvent indorser as the record
shows, and the bank surrendered the notes and its rights

against Wilson in consideration of the funds authorized to be paid to it by the lumber company.

Under such circumstances, although the act of the lumber company in permitting its funds to be used for such a purpose was *ultra vires,* a court of equity would not lend its aid to the corporation to recover such funds.

Where there has been an *ultra vires* conveyance of real property or transfer of personal property fully executed, and the property delivered, the corporation cannot maintain a suit to avoid the transaction and recover the property. Clark & Marshall on Corporations, vol. 1, p. 612. *St. Louis Vandalia & T. H. R. Co.* v. *Terre Haute & Indianapolis R. Co.,* 145 U. S., 393, 12 Sup. Ct., 953, 36 L. Ed., 748; *Rogers* v. *N. C. & St. L. Ry.,* 91 Fed., 299, 33 C. C. A., 517; 3 Fletcher on Corporations, section 1559 et seq.

Even though the bank knew that corporate funds were being used to pay these Wilson notes, the rule announced in the foregoing authorities is that, when the parties are *in pari delicto,* the court will leave them in the position in which they placed themselves. Moreover, in this case the bank parted with a valuable asset, namely, its right against Wilson as indorser of these notes, and it would be inequitable to allow the corporation a recovery against the bank upon such facts.

This court will not entertain suits in affirmance of such *ultra vires* contracts (*Marble Co.* v. *Harvey,* 92 Tenn., 115, 20 S. W., 427, 18 L. R. A., 252, 36 Am. St. Rep., 71); neither will it aid the parties in an effort to disaffirm these contracts when executed (*Tennessee Ice Co.* v. *Raine,*

107 Tenn., 151, 64 S. W., 29; *Barrow* v. *Turnpike Co.,* 9 Humph., 304).

Since the corporation itself could not have maintained this suit, it follows under our authorities that a trustee for the benefit of creditors is likewise precluded from any such relief.

In *Nashville Trust Co.* v. *Bank,* 91 Tenn., 336, 18 S. W., 822, 15 L. R. A., 710, it is said that—"An assignee for the benefit of creditors takes the choses in action of his assignor, not as a purchaser for value, but as a volunteer, and therefore subject to all the defenses and equities existing against them in the hands of the assignor; and not only so, but that he holds as the representative of the assignor and his estate, and in this respect is to be distinguished from a particular assignee holding for himself, either as volunteer or purchaser."

In *Stainback* v. *Junk Bros., etc., Co.,* 98 Tenn., 306, 39 S. W., 530, there was an effort by the trustee under a general assignment to set aside an unauthorized issue of bonds, which issue, however, had been ratified by the corporation. This relief was denied the trustee, and the court said:

"The assignee in this case is not himself an innocent, but a voluntary, holder under the assignment, taking such rights only as the company could confer upon him by the assignment and no more. The creditors who come in under the trust assignment can take only such right as the assignee has. The assignee has the right to the property conveyed to him only so far as the company could convey it, and subject to such rights as have been fixed upon it

prior to the assignment to him. It does not appear that the other creditors' debts antedate the bond transaction and the mortgage then made, so they must be presumed to have extended credit with knowledge of the existence of the mortgage and bonded debt."

In Corpus Juris it is said that: "At common law, by the weight of authority, an assignee for the benefit of creditors cannot avoid a conveyance made by the assignor in fraud of his creditors prior to the assignment. . . . 5 C. J., 1213.

The foregoing considerations necessitate the conclusion that this suit cannot be maintained.

The bill must be dismissed for another reason. It appears from the testimony of the trustee that a number of the creditors became such after the corporate assets herein sued for were diverted to the use of Whitmel Kearney. There is no proof that this diversion was brought about with any idea of defrauding these creditors. So far, therefore, as he represents subsequent creditors the trustee cannot get along.

We have many cases holding that a voluntary conveyance cannot be set aside by subsequent creditors in the absence of proof of fraudulent intent. *Dillard* v. *Dillard*, 3 Humph., 41; *Nicholas* v. *Ward*, 1 Head, 323, 73 Am. Dec., 177; *Hickman* v. *Perrin*, 6 Cold., 135; *Vance* v. *Smith*, 2 Heisk., 343.

"This rule applies to creditors of corporations as well as to creditors of natural persons. The assets of a corporation are not held by it in trust for the benefit of its creditors in any such sense as to entitle a creditor to at-

tack as fraudulent a voluntary conveyance made by the corporation before he became a creditor." C. & M. On Corporations, vol. 3, p. 2359.

This doctrine as to corporations was announced in *Graham* v. *La Crosse & M. R. R. Co.,* 102 U. S., 148, 26 L. Ed., 106, and has been applied by the courts in many cases. See citations of this case in Rose's Notes.

There was no error in the decree of the chancellor dismissing this bill, and it will accordingly be affirmed.