IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
OCTOBER 10, 2005 Session

# MONUMENTAL LIFE INSURANCE COMPANY v. LINDSAY PUCKETT
# and the Personal Representative of the Estate of Norman Christopher Puckett

### Direct Appeal from the Circuit Court for Hardeman County
### No. 9574    Jon K. Blackwood, Judge

_____

### No. W2005-00083-COA-R3-CV - Filed January 9, 2006

_____

This appeal stems from a declaratory judgment action determining the rights of the parties to a life insurance contract. On appeal, the insurer asserts that the chancery court erred when it found that the agent for the insureds was acting outside the course and scope of her authority when she terminated the life insurance contract. Further, the insurer asserts that, even assuming that the agent was acting outside the course and scope of her authority, the insureds ratified her actions. We reverse and declare that the insurance policy was not in effect at the time of Mr. Puckett's death. We remand for a determination of whether Ms. Puckett's actions constituted a violation of section 56-53-103 of the Tennessee Code, and if so, the related expenses the insurer is entitled to receive pursuant to section 56-53-103.

### Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded

ALAN E. HIGHERS, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and DAVID R. FARMER, J., joined.

Bobby M. Leatherman, Memphis, TN, for Appellant

Terry Abernathy, Selmer, TN, for Appellee

## OPINION

### I. FACTS & PROCEDURAL HISTORY

In January of 1998, Phoebe Waynick ("Waynick"), mother of Lindsay Puckett ("Wife"), requested a life insurance policy (the "Policy") covering the life of Norman Christopher Puckett ("Husband"), signing Wife's and Husband's name to the request. Thereafter, the premiums for the Policy were withdrawn from Husband's and Wife's joint bank account. Waynick would often make deposits into that account to cover the life insurance premiums. In 1998, Husband and Wife divorced.

On March 4, 2002, Monumental Insurance Company ("Monumental" or "Appellant") attempted to draft the account for the monthly premium, but the bank had previously closed Wife's and Husband's joint account. Thereafter, Waynick sent a letter to Monumental cancelling the coverage under the life insurance policy, once again signing the name of Wife. However, Waynick did not sign Husband's name to the termination letter.

On March 23, 2002, Husband was critically burned while trying to light a barbecue pit. Husband subsequently died on March 29, 2002. Between March 23rd and March 29th, Wife contacted Monumental to inquire about the premiums on the Policy. Monumental informed Wife that the Policy had been cancelled. Thereafter, Monumental faxed a copy of the termination letter to Wife. On May 2, 2002, Wife wrote a letter to Monumental disavowing the termination letter stating that Waynick sent the letter without authorization and that she and Husband had wished to continue the benefits when Waynick cancelled the Policy. Wife also informed Monumental that she sought the benefits under the Policy and that she had reopened her bank account with the funds necessary to pay for the unpaid premiums.

On December 13, 2002, Monumental filed a complaint for declaratory judgment seeking a declaration of what benefits Monument owed under the Policy against Wife and and the personal representative of Husband's estate ("Defendants" or "Appellees"). In its order dated October 13, 2004, the chancery court found that while Waynick was an agent or friend of Husband and Wife, she acted outside the course and scope of her authority to act for Husband and Wife. Further, the chancery court found that the loss occurred within the 31 day grace period and that Monumental was required to pay under the life insurance policy. On October 22, 2004, Defendants filed a motion to alter or amend the judgment requesting that the trial court award prejudgment interest. On November 3, 2004, Monumental filed a motion to amend findings and to alter or amend the judgment stating that the judgment should be altered because Wife ratified Waynick's conduct. On December 17, 2004, the trial court granted Defendants' motion and denied Monumental's motion.

## II. ISSUES PRESENTED

Appellant has timely filed its notice of appeal and presents the following issues for review:
1. Whether Waynick acted outside the course and scope of her authority when she cancelled Husband's insurance policy;
2. Whether Huband and Wife ratified the conduct of Waynick, terminating Husband's life insurance policy;
3. Whether Wife may take advantage of the grace period found in Husband's life insurance policy;
4. Whether the trial court erred in awarding any prejudgment interest; and
5. If not, whether the award of prejudgment interest was excessive.

For the following reasons, we reverse the decision of the chancery court and remand for further proceedings.

## III. STANDARD OF REVIEW

Since this was a trial conducted without a jury, this Court reviews any findings of fact by the trial court under a *de novo* standard with a presumption of correctness for the trial court's findings. Tenn. R. App. P 13(d). This Court reviews a trial court's conclusions of law de novo with no presumption of correctness. *Lacy v. Cox*, 152 S.W.3d 480, 483 (Tenn. 2004) (citing *S. Constructors, Inc. v. Loudon Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001); *Presley v. Bennett*, 860 S.W.2d 857, 859-60 (Tenn. 1993)).

## IV. DISCUSSION

While Appellant raises several issues in this case, this Court finds one issue to be dispositive of the case, namely, whether Husband and Wife ratified the conduct of Waynick.

At trial, the chancery court found that, during the life of the Policy, Waynick acted as a agent for Husband and Wife to maintain the Policy. However, the chancery court also found that Waynick acted outside the course and scope of her agency relationship with Husband and Wife when she terminated the Policy because Husband and Wife wanted to continue the Policy.

"Generally, a policy may be canceled by the insured or his proper representative only." 6A Appleman on Insurance § 4224 (1972). Thus, an agent for an insured may cancel an insurance policy if that person has authority from the principal to do so. Authority to act may be actual or apparent.

"The actual authority of an agent 'consists of the powers which a principal directly confers upon an agent or causes or permits him to believe himself to possess . . . .'" *Milliken Group, Inc. v. Hays Nissan, Inc.*, 86 S.W.3d 564, 567 (Tenn. Ct. App. 2001) (quoting 2A C.J.S. *Agency* § 147 (1972)). "Actual authority flows from the manifestations of the principal to the agent." *Id.* (citing 2A C.J.S. Agency § 147). "If an agent acts with actual authority, then he may bind the principal in

contract regardless of whether the third party is actually aware of that authority at the time of the transaction." *Id.* (citing *McConnico v. Third Nat'l Bank*, 499 S.W.2d 874, 883 (Tenn. 1973)).

"Apparent authority is 'that authority which a principal holds his agent out as possessing or permits him to exercise or to represent himself as possessing, under such circumstances as to estop the principal from denying its existence.'" *Id.* at 569 (quoting 2A C.J.S. § 157(a) (1972)). "Apparent authority must be established through the acts of the principal, rather than those of the agent." *Id.* (citing *Bells Banking Co. v. Jackson Centre Inc.*, 938 S.W.2d 421, 424 (Tenn. Ct. App. 1996)).

In this case, nothing in the record preponderates against the chancery court's findings that while Waynick was an agent for Husband and Wife, Waynick exceeded the course and scope of her authority. Thus, the chancery court's decision must be upheld unless Husband and Wife ratified the unauthorized conduct of Waynick.

As our supreme court has noted,

> [a] fundamental principle of agency law is that "[a] principal is bound neither by contracts made by a person not his agent, nor by those of his agent beyond the scope of his actual and apparent authority, which he has not ratified and is not estopped to deny." *See, e.g., Bells Banking Co. v. Jackson Ctr., Inc.*, 938 S.W.2d 421, 425 (Tenn. Ct. App. 1996). Although an unauthorized contract is generally voidable by the principal, a principal who ratifies that contract is bound by its terms as if he or she had executed it originally. *See* 12 Williston on Contracts § 35.22 (4th ed. 1999) (stating that ratification by a principal "relates back and supplies original authority to execute the contract"). Ratification of a contract occurs when one approves, adopts, or confirms a contract previously executed "by another[,] in his stead and for his benefit, but without his authority." *James v. Klar & Winterman*, 118 S.W.2d 625, 627 (Tex. Ct. App. 1938); *see also Gay v. City of Somerville*, 878 S.W.2d 124, 127 (Tenn. Ct. App. 1994) (defining "ratification" as "the express or implied adoption and confirmation by one person of an act or contract performed or entered into in his behalf by another who assumed to act as his agent without authority so to do"). Simply stated, "ratification is confirmation after conduct." *Gay*, 878 S.W.2d at 127.
>
> Before ratification of an unauthorized transaction will be considered valid and binding, the principal must have "'full knowledge, at the time of the ratification, of all material facts and circumstances relative to the unauthorized act or transaction.'" *Gough v. Insurance Co. of N. Am.*, 157 Tenn. 546, 549-50, 11 S.W.2d

887, 888 (1928) (quoting 2 C. J. § 476). Because ratification is usually a question of the principal's intent, this issue is generally regarded as a question of fact to be determined from all of the surrounding circumstances. *See Absar v. Jones*, 833 S.W.2d 86, 89 (Tenn. Ct. App. 1992); *Stainback v. Junk Bros. Lumber & Mfg. Co.*, 98 Tenn. 306, 311, 39 S.W. 530, 531 (1897). However, ratification may be established "from the conduct of the purported principal manifesting that he consents to be a party to the transaction or from conduct justifiable only if there is a ratification." *Osborne Co. v. Baker*, 35 Tenn. App. 300, 305, 245 S.W.2d 419, 421 (1951).

***Webber v. State Farm Mut. Auto. Ins. Co.***, 49 S.W.3d 265, 269-70 (Tenn. 2001) (footnote omitted). "As a general rule, when a knowledge of the unauthorized transaction of the agent comes to the principal, he must with reasonable promptness disaffirm the acts of the agent, or he will be held bound thereby." ***Whitfield v. May***, 89 S.W.2d 764, 769 (1935) (citations omitted). "Silence can amount to a ratification where a party with knowledge of the transaction fails for a reasonable time to protest or dissent." ***Valley Fid. Bank & Trust Co. v. Cain P'ship, Ltd.***, 738 S.W.2d 638, 640 (Tenn. Ct. App. 1987) (citing *McClure v. Evartson and Mottley*, 82 Tenn. 495 (1884)).

At trial, Waynick testified that she informed both Husband and Wife that she terminated the Policy in March prior to Husband's injury and subsequent death. Further, Wife testified that she and Husband both knew that Waynick had terminated the life insurance policy and were upset that Waynick had done so. However, neither party did anything to disaffirm the termination letter sent by Waynick. In addition, prior to Husband's death, Wife telephoned Appellant allegedly to inquire about why the premiums had not been withdrawn from her account. Monumental informed her that the account was terminated and faxed her the termination letter written on behalf of Wife by Waynick, who signed the letter in Wife's name. Prior to Husband's death, Wife did nothing to resolve this issue. This Court notes that the record reflects that, in a letter to Monumental, Wife finally disavowed the termination letter in May of 2002, over one month after Husband died. This disavowal was not done within a reasonable time. *See Furnish v. Burge*, 54 S.W. 90, 93 (Tenn. Ch. App. 1899) ("It is frequently said that the principal must disavow the act promptly after notice, or he will be bound by it; and this, it is said, is so 'wherever a loss accrues from a delay on the part of the principal to disavow the agency, or where the transaction may turn out a profit or loss, according to circumstances.'" (citations omitted)). Thus, regardless of whether Waynick had the authority to act on behalf of Husband and Wife with regards to the Policy, Husband and Wife both ratified the conduct of Waynick through their inaction.[1] The Policy allowed for the insured to cancel the policy at any time. As such, the Policy was terminated when Monumental was provided notice of the termination. Although the exact date when Monumental received the notice was not adduced at trial,

---

[1] This Court is mindful that the termination letter was signed only in Wife's name. However, Wife's signature alone could terminate the Policy if she acted as an agent for Husband or if Husband ratified her conduct. Since Wife ratified Waynick's conduct, this ratification bound Wife as if Waynick had actual authority to do so. Thus, Husband's inaction when notified of the termination ratified Waynick's conduct, which was done as if done by Wife.

Wife admitted that she received a copy of the letter terminating Husband's coverage from Monumental prior to Husband's death. Thus, when Husband died, the Policy had already been terminated.[2] Accordingly, we reverse the decision of the chancery court and declare that the Policy was not in effect at the time of Husband's death. Further, we remand for a determination of whether Wife's actions constituted a violation of section 56-53-103 of the Tennessee Code, and if so, the related expenses Monumental is entitled to receive pursuant to section 56-53-103. All other issues in presented in this Appeal are pretermitted.

## V.  CONCLUSION

For the foregoing reasons, we reverse the decision of the chancery court and declare that the Policy was not in effect at the time of Husband's death. Further, we remand for a determination of whether Wife's actions constituted a violation of section 56-53-103 of the Tennessee Code, and if so, the related expenses Monumental is entitled to receive pursuant to section 56-53-103. Costs of this appeal are taxed to Appellees, Lindsay Puckett and the Personal Representative for the Estate of Norman Christoper Puckett, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE

---

[2] Under the policy, coverage ended on the first of the following dates: "(1) the date the Policy is terminated. (2) The premium due date [the insured] fail[s] to pay the required premium, except as provided in the Grace Period." Thus, Husband's coverage under the Policy ended the earlier of (1) the date the Policy was terminated or (2) 31 days after a premium goes unpaid after becoming due. In this case, no premium was paid for March. In such case, the Policy would have been in effect until one of the following actions occurred: (1) the Policy was terminated or (2) the 31 day grace period expired and the premium was not paid. Here, Waynick's actions terminated the Policy before the 31 day grace period expired.