## M. J. SANDERS et al. v. FARMERS UNION CO. et al.

Eastern Section.　May 15, 1927.

No petition for Certiorari was filed.

1. **Appeal and error. Appeal held not to come too late where the parties had agreed to a re-hearing by the Chancellor.**

Where after a referees report was entered, a controversy arose between the parties and it was agreed that certain portions of the report be stricken out and the cause again heard by the Chancellor, held that the parties were entitled to appeal from the last order and were not bound by the first decree.

2. **Contracts. Evidence. Contract held to be one of sale and not of agency.**

A contract of the International Harvester Company with a company to handle its goods where the contract referred to "purchaser" and "indebtedness" and provided for the giving of certain notes in payment of accounts, held that the contract was one of sale and not of agency.

3. **Sales. In order to retain title in a conditional sale the property must be described so that it can be identified.**

In order to make a valid retention of title, under the conditional sale laws of this state, the property in which the title is retained must be susceptible of identification.

4. **Sales. Property held not sufficiently described to retain title.**

In a contract with the International Harvester Company where the contract provided that the title should be retained by the International Harvester Company to certain machinery described in the order and other machinery later ordered, held the property was not sufficiently described for the company to retain title.

5. **Sales. Conditional sales. Conditional sale retaining title of goods to be sold at retail is void.**

It is well settled that a conditional sale of goods, of whatever kind, to a retail dealer, where it is understood and known that such goods are to be resold by the dealer to its customers in regular course of trade, that the contract, insofar as it attempts to retain title in such goods, is void.

6. **Sales. Where conditional sale is void, the vendee takes absolute title.**

Where party attempted to retain title in goods that were to be sold at retail, held that the provision in regard to the retention of title was void and the absolute title to the goods vested in the purchaser.

7. **Sales. Conditional sales. Instrument retaining title must be signed at the time of the sale.**

Where implements were shipped to a company under a contract which was held to be a contract of sale and later notes were given providing that the title was to be retained by the seller, held that the provision in regard to the retention of title was void, for title in property can only be retained at the time the sale is made.

Appeal from Chancery Court, Washington County; Hon. J. A. Caldwell, Special Chancellor.

Reversed and remanded.

Cox & Taylor and Carter & McKinney of Johnson City and Epps & Epps, of Jonesboro, for appellant.

Sam S. Kirkpatrick, of Jonesboro, for appellee.

SENTER, J. The original bill was filed in this cause by M. J. Sanders on behalf of himself and all other creditors of the defendant Farmers-Union Company, as a general creditors bill; alleging the insolvency of the defendant. The bill prays for the usual process, and for injunction against the prosecution of suits by other creditors, attachment and a receiver, and to the end that all creditors be required to prosecute their claims against the defendant in this cause, and for general relief. The bill was sustained by the Chancellor as a general creditors bill.

In the course of the insolvent proceedings in the cause, the controversy involved on this appeal arose between appellants, who are preferred creditors of a certain class, and the appellee International Harvester Co. The appeal in this cause is by Virginia-Carolina Chemical Co., Cowetta Fertilizer Co., Union Guano Co., Federal Chemical Co., and Armour Fertilizer Co. Inc., and is an appeal from the decree of the Chancellor holding that appellee, International Harvester Co., is entitled to preference over appellants in certain assets, or the proceeds thereof, of the defendant Farmers Union Co. No question is made on this appeal as to the matter of the appellants, or either of them, and appellee, being preferred creditors over the general creditors of the insolvent concern, and hence the question presented for determination on this appeal, and under the assignments of error filed by appellants is confined to so much and such parts of the final decree of the Chancellor as adjudges and decrees that the appellee, International Harvester Co., by reason of its notes, contract and agreements with the Farmers Union Co., has a preferential right superior to the claims of appellants to the proceeds realized by the receiver from certain farming machinery which was in the hands of the insolvent concern at the time the general creditors bill was filed, and whether such preferential right was superior to the rights and claims of appellants to the proceeds derived from said machinery, etc.

The assignments of error are six in number, and are as follows:

## I.

"The court erred in holding that at the time the receiver took over the affairs of the defendant, Farmers Union Co., there was sufficient machinery on hand, covered by the contract and notes

of appellee, International Harvester Company, to satisfy its debt and that under said contract and notes it had a right to insist that the proceeds arising from the sale of said property be applied first to the payment of its debt.

## II.

"The court erred in holding that appellee, under its contract with the defendant, or under its notes executed by the defendant, had any rights in and to the property in the possession of the defendant at the time of the receivership, and taken over by the receiver.

## III.

"The court erred in holding that appellee had preserved its rights under said contract or notes with the defendant and had followed the property through into the hands of the receiver so as to allow it to reach the funds arising from the sale of said property.       .    ⋅

## IV.

"The court erred in holding that the contract between appellee, Harvester Company, and defendant, Farmers Union Co., taken in connection with the notes executed in accordance with said contract, constituted a retention of title contract of sufficient definiteness to protect the rights of appellee against other creditors.

## V.

"The court erred in holding and in ordering that the claim of appellee, as heretofore allowed, be preferred to the extent of the judgment heretofore rendered in this cause over other creditors upon the ground that at the time the receivership took over the affairs of the defendant company, there was sufficient machinery on hand, covered by the contract and notes of appellee, Harvester Company, to satisfy the debt due it, and that it, under said contract and notes, had a right to insist that the proceeds arising from the sale of this property be applied first to the payment of its debt; or upon the ground that the contract existing between appellee, Harvester Company, and defendant, Farmers Union Company, taken in connection with the notes executed in accordance with same, constituted a retention of title contract of sufficient definiteness to protect the rights of appellee against other creditors; or upon any other grounds.

## VI.

"The honorable court should have held that appellee was not entitled to any preference or priority in payment over appellants

and that both appellants and appellee were upon the same footing
or basis or equality, and that said fund in the hands of the receiver
should be pro rated equally among all of them, and in not so hold-
ing, it is respectfully submitted that the court erred.''

The question is made by appellee to the effect that, previous
to the final decree appealed from in this cause, the preferential
rights of appellee in the fund realized from the sale of the farming
implements, etc., superior to and over the claims of appellants,
had been fully determined and adjudicated by the former decrees
of the Chancellor in the cause, and that said former decree was
not excepted to or appealed from by appellants; that the final de-
cree appealed from was upon a rehearing by the Chancellor at a
term subsequent to said former decree, and the appeal, therefore,
came too late. This question will be first disposed of.

It appears that the Clerk and Master, in pursuance of an order
of reference, filed a report on December 5, 1924. In paragraph E
of said report the master reported ''that the claim of the Inter-
national Harvester Co. by reason of their contract and especially
their notes executed to them by the Farmers Union Co., constitutes
a prior preferred claim, and the amount found to be due them from
the record is $2953.48.'' This item as reported by the master in
his capacity as receiver, is practically in the same language used
by him under items ''B,'' ''C,'' ''D,'' and ''F,'' which items re-
spectively refer to the claims of these appellants, and in which
their claims are also held to be preferred over general creditors.

At this point in the record there appears to be some confusion.
On the same date, and immediately following the report of the
master containing the above items, which report appears to have
been dated and signed by the master, there is a further report with
reference to the International Harvester Company's claim, which
sets out the nature of the claim more in detail, and states: ''The
master reports the machinery mentioned above was the property
of the said International Harvester Co. and that the proceeds there-
of, to the extent of their debt, $2953.04, is covered by a lien which
is superior to other creditors.''

This report also recites: ''I am of the opinion and report that
this claim of International Harvester Co. of America, should be
paid in full before other preferred creditors share in the assets of
the company.''

There was a decree in the cause of date December 14, 1925,
and the portion of said decree made the subject of the controversy
between the present litigants is in the following language: ''As
regards the claim of the International Harvester Co. In this claim,
the contracts and notes filed clearly indicate that there was a defi-
nite understanding between the parties that this machinery was

to remain the property of petitioner until sold and the proceeds accounted for, and while there is no doubt in the mind of the court that petitioner would not be protected against the individual owners of the machinery so placed with the Farmers Union the proof shows that there was ample machinery on hand in the possession of the defendant at the time of the receivership to take care of the claim, and as between petitioner and defendant, the rights of petitioner, as covered by contract and notes will be protected, and as to this claim, the master's report is sustained.''

Certain exceptions had been filed to the master's report by certain creditors, and this decree of December 14, 1925, appears to have been a hearing upon the exceptions and upon the entire record. The record discloses that on January 6, 1926, a consent order was entered in the cause, among other things the Clerk and Master was directed as follows: ''If there are not funds sufficient to pay all preferred creditors, is there any priority among creditors, and if so, in what fund, to what extent and how arising?'' The order containing the above directions to the master appears to have been approved by all of the attorneys of record interested in the cause.

On February 2, 1926, in pursuance of the order of reference of January 6, 1926, the master reported as follows with reference to the claim of the International Harvester Co.:

''After the payment of the Maupin claim above, I am of the opinion and report that this claim of International Harvester Co. should be paid in full before other preferred creditors share in the assets of the company. . . .''

On February 15, and within the time allowed by said order, appellants filed exceptions to so much of the report of the master of February 2, 1926, as gave the Harvester Co. a preference over the claims of appellants in the assets of the Union Co. Upon the filing of the exceptions by appellants, appellee replied to the exceptions, and in which reply it was insisted that this same matter had been previously disposed of and adjudicated in a former decree, referring to the decree of December 14, 1925. Thereupon, a sharp and spirited controversy arose between the parties with reference to certain pages contained in the report of the master of December 5, 1924, and a certain instrument purported to have been signed by the Clerk and Master denying that said sheets constituted a part of said report. It appears that this controversy resulted in an agreement that the objectionable portions of the report of the master, should be stricken out and that the Chancellor should rehear the cause. Appellee states on page 5 of its brief on this subject: ''And after considerable spirited pleadings, affidavits arguments, etc., it was agreed that said objectionable parts of

said report should be stricken out, and that the Chancellor should rehear the cause.'' Whereupon, the cause was again heard by the Chancellor upon the entire record, exceptions, briefs, etc., on June 29, 1926, and a decree entered, and as the same affects this question of the preferential rights of appellee, is in the following language:

"That as between preferred creditors, the claim of International Harvester Company is preferred to the extent of its debt because of the fact that at the time the receivership took over the affairs of the defendant company, there was sufficient machinery on hand covered by the contract and notes of the International Harvester Co. to satisfy the debt due International Harvester Co., and this creditor under said contract and notes had a right to insist that the proceeds arising from the sale of this property be applied first to the payment of its debt. . . . It is therefore ordered that the claim of the International Harvester Co. as heretofore allowed, be preferred to the extent of the judgment hereinbefore rendered in this cause, over other preferred creditors.''

It is from this decree that appellants have appealed and have assigned errors as before set out.

In this state of the record, and in view of the controversy arising between the parties, and the agreement that certain portions of the report be stricken out, and the cause heard again by the Chancellor, we are of the opinion that the contention now made by appellee that the appeal comes too late, and should have been from the former decree, cannot be sustained. We are of the opinion that appellants are entitled to have the final decree of the Chancellor reviewed by this court on the assignments of error filed.

The six assignments of error will be grouped and disposed of collectively. The fifth assignment of error, as suggested by appellants in the brief and argument filed in support of the assignments of error, presents the questions to be determined on this appeal, and covers the questions raised by the other assignments of error.

The contract between the International Harvester Co. and the Farmers Union Co., dated December 2, 1921, and referred to in the record as Exhibit "L" to the deposition of N. N. Self, is contained in a small book, and is a printed form. The contract between the parties begins on page 3 and concludes on page 6. Following the contract bound in the same paper bound printed book is a printed price list and description of the various farm implements and machinery sold by the International Harvester Co., and is also an order blank. This covers, together with instructions, etc., about 125 pages. The contract, the list of farming machinery, etc., is so

arranged in the printed pamphlet that the initial order given at the time of the signing of the contract is included under the appropriate arrangement of the various machines, etc.

The contract is styled at the top "Sale Contract and Order." Preceding the conditions and provisions of the contract numbered from 1 to 12, inclusive, the contract states:

"Dated December 2/1921.

To

"International Harvester Company of America,

"Knoxville, Tennessee.

"The undersigned, the purchaser, hereby orders of said company the goods marked as ordered in the list made a part of this contract and request that the same be shipped to Farmers Union Co., at Jonesboro, Tenn., on or about the date or dates indicated herein.

"In addition to the goods herein ordered and specified, the purchaser agrees to purchase—and send specifications therefor, prior to December 1, 1921, to the company's branch manager having charge of the purchaser's territory,—additional goods of some of the kinds herein listed to such an amount that his total purchases under this contract for the 1922 season shall aggregate at least ——— dollars, ($———)."

"In consideration of the acceptance of this order the purchaser agrees to all the terms, conditions and provisions of this contract, as follows:"

Conditions Nos. 1 to 12, inclusive, (exclusive of condition No. 4, which pertains to warranty, and unnecessary to quote herein) are as follows:

"1. To accept delivery of said goods at point of shipment, receive the same on arrival, pay all freight charges thereon from the f. o. b. point or points named in the price schedules, and settle for the same at the date, terms, and prices designated in the price schedule attached hereto. (For wagon prices see wagon supplement). The purchaser shall pay for said goods in cash on or before the dates specified, and if not then paid, shall pay interest on such purchase price at the rate of eight per cent per annum and shall at any time upon the company's request execute and deliver a bankable note or notes for the purchase price of said goods or any of them, said notes to mature at the dates herein agreed upon for payment and to draw interest thereafter at the above named rate.

"2. To offer said goods for sale throughout the following territory: Jonesboro and vicinity.

"3. The title to all goods shipped under this contract, with right of repossession for default is reserved by the company

until the purchaser has made full payment in cash for all of said goods and for all notes given therefor. Prior to full settlement in cash, the purchaser shall have no right to sell or dispose of any goods delivered hereunder except for value received in the ordinary course of trade and upon the express condition that prior to the delivery of any said goods to a customer, the purchaser shall secure from said customer a full settlement in cash or goods and bankable notes, and that the proceeds of all resales shall be considered the property of the company in lieu of the goods so sold and held in trust for it and subject to its order, as provided in paragraph 5 hereof, until all sums due under this contract have been fully paid. At any time on request the purchaser will give the company's representative full information regarding goods on hand, goods sold and the proceeds thereof, to enable it to ascertain and enforce its reserved rights under this clause. Nothing herein shall release the purchaser from payment for all goods ordered and delivered here and after delivery to him said goods shall be held at his risk and expense in respect to loss or damage from any cause and taxes and charges of every kind.

"5. Upon request of the company at any time the purchaser agrees to turn over, endorse and assign to the company a quantity of customer's notes or, if notes are not available, then customer's accounts sufficient to fully cover and secure all indebtedness of the purchaser hereunder, such notes and accounts to be held as collateral security to said indebtedness. Payment of said customers' notes and accounts at maturity is guaranteed by the purchaser and presentation, demand, protest, notice of protest and diligence are waived both as to makers and endorsers. In case of default in payment of any of said collateral notes or accounts, the purchaser agrees to remit cash for full amount of same together with interest and collection charges within fifteen days after maturity. All collections on collateral notes or accounts are to be credited on the note or notes or account of the purchaser first becoming due. On payment of purchaser's indebtedness in full, all collateral notes or accounts remaining in possession of the company are to be returned.

"6. The purchaser further agrees that all repairs and extras for the goods specified, ordered and furnished hereunder (except special repair parts and repairs for Light Wood Lever and Boss Harrow, which are net cash) shall be received and paid for at the list prices quoted in the company's latest repair catalogues, less the discounts on the different lines of goods shown on page seven of this contract and on the following

terms: Net cash sixty days from first day of the month succeeding month of shipment, with interest after maturity subject to discount of five per cent for cash if paid on or before the tenth day of the month succeeding month of shipment. Purchaser to pay all transportation charges on same from point of shipment. The purchaser agrees to order a sufficient quantity of repairs for all lines handled hereunder to take care of the trade in the aforesaid territory during the term of this contract.

"7. The purchaser agrees to examine all goods on arrival and to notify the company of all claims on account of shortage or defective parts within ten days after receipt of goods, and failing so to do the company is not to be held responsible therefor. The company shall have a reasonable time in which to replace any shortage or defective parts for which it is responsible.

"8. All shipments are to be routed as the company may direct, and the company will use its best efforts to make shipments on or before the date specified, but it shall not be responsible for delays, damage or loss after delivery of goods to carrier, or for failure to ship goods on time or fill orders, where it is prevented by acts of God, or by fire or other elements, or by riot, strikes, labor disturbances or by the law or the decree or judgment of any court, or if the demand for any goods shall exceed the company's available supply, or by any cause beyond the company's reasonable control.

"9. If the purchaser fails to furnish written specifications by December 1, 1921, for any of the additional goods to be specified as aforesaid or refuses to accept delivery of any of the goods now or hereafter specified in time for the 1922 selling season he shall pay the company on demand ten (10) per cent of the purchase price of such goods as liquidated damages, and in addition thereto the company shall thereupon have the right to terminate this contract and refuse to furnish any further goods hereunder.

"10. In addition to the goods now ordered, all goods heretofore or hereafter shipped to the purchaser, between the dates of November 1, 1921, and October 31, 1922, both inclusive, shall be considered as sold under this contract, and subject to all of its provisions, except as different prices or terms have been or may be agreed upon at the time, and it is understood that the company reserves the right to reject any orders for additional goods in excess of the aggregate herein agreed to be purchased and sold, or to change the prices and terms applicable thereto. This contract shall terminate as to each line

of goods handled hereunder at the close of the 1922 season therefor.

"11. All prices now or hereafter quoted under this contract are subject to increase without notice by the amount of any sales tax the company may be required to pay under any present or future law or laws of the United States on account of the purchase or sale of any goods delivered hereunder, such amount to be added to the price or bill as a separate item as the law may require or the company determine.

"12. It is understood that this order is taken subject to the acceptance of the company's branch manager having charge of the purchaser's territory, and that this contract contains the entire agreement between the parties with reference thereto, and that there shall not be any change in any of the prices, terms or conditions printed herein, unless such change is made and accepted in writing by said branch manager. The copy of this contract retained by the company shall be considered the original and shall control in case of any variation between it and the duplicate retained by the purchaser. The purchaser's rights under this contract, shall not be assigned without the consent of the company's branch manager.

"Purchasers signature. Farmers Union Co.

N. N. Self, Mgr.

"Witnesses C. D. Tate, (traveler).

"Accepted at Knoxville, Tenn. (branch house) Mar. 10, 1922.

"International Harvester Co. of America,

"By T. H. Williams, (branch manager)."

The printed pamphlet in which this contract is contained makes provision for the terms of settlement on the various articles scheduled under the several heads, and in most of these items is contained, in addition, what is styled a "carry clause." The datings, and the maturity dates vary with different implements and articles scheduled in the price list in the pamphlet referred to, As an example, under the head of "Mowers" it is provided:

"MOWERS.

"Net cash November first with interest after maturity, less discount of five per cent for cash if paid September first.

"Carry Clause. All mowers shipped during the season which are on hand unsold November first, but not exceeding twenty-five per cent may be settled for by note due November first of subsequent year, less discount of five per cent for cash September first of subsequent year. Inasmuch as the carry over is in numbers of machines, it does not become operative unless four (4) machines or more are shipped during the season."

It is contended by appellee that the above contract is an agency contract, and that under its provisions the machinery, implements, etc., ordered by the Union Company were consigned by the Harvester Company and not sold outright; that the contract above quoted covers three classes of property or transactions between the parties. "First: That property which is shipped on consignment, and that this is the class of property which was on hand at the date of the receivership. It is this class of property which was ordered and specified at the time the contract was signed." "Second: In addition to the above property which the Union Co. was to sell as agent for this claimant, it could purchase outright, other property to the extent of its credit margin. This class of property was sold outright and was not consigned, and concerning which said contract, the word purchase and-purchaser is frequently used." . . . "Third: The repairs and extras for the two classes of property stated above. These were purchased and not consigned."

We cannot agree to this construction of the contract. We fail to find anything in the contract which would warrant that interpretation. We think this contract applies equally to all goods shipped under it, and that it is either an agency or consignment contract, or a sale contract, one or the other. The language in the contract immediately following the words "purchaser agrees to purchase, etc." and send specifications therefor . . . additional goods of some of the kinds herein listed to such an amount that his total purchases under this contract for the 1922 season shall aggregate at least ———— dollars, merely intends to provide for a minimum amount of such goods that the agent or dealer will order under the contract for the season of 1922. This is a printed form of contract, and the amount of the minimum is left blank, and we think is immaterial. As above stated, this contract is either a dealer's contract or it is an agent's contract. If it is a dealer's contract, the implements, etc. contained in the order at the time the contract was signed, as well as subsequent shipments made under the contract were sold to the Farmers Union Co. as the purchaser. If it is to be construed as an agent's contract, wherein the Harvester Co. ships to the Farmers Union Co. the goods ordered under the contract on consignment, to be sold by the Union Co. to customers, then all of the implements and goods shipped to the Union Co. under said contract, except repair parts, must be considered as goods shipped on consignment, and such of the goods as were on hand at the time of the filing of the general creditors bill belonged to the Harvester Co.

The first question, therefore, to be considered and determined, is as to the character of the contract in question, whether of agency, or a contract for sale of the goods.

The contract uses the word "purchaser" throughout. It refers to the Farmers Union Co. as the purchaser. In the several provisions and conditions of the contract any amounts accruing to the Harvester Co. on account of goods shipped under the contract, is referred to as "indebtedness." In the matter of settlements covered by the conditions of the contract, provision is made for settling the "indebtedness." Provision is made in the schedule of items for settling for any of the implements on hand and unsold at the end of the selling season, November 1, 1922, by taking the notes of the Farmers Union Co. All goods sold by the Farmers Union Co. to its customers, and settlements, or either on cash sales or where notes are taken from the customer, together with such other notes and accounts as the Union Co. may have against customers, are to be hypothecated as collateral security for the goods shipped to the Union Co. under the contract.

Contracts similar to this have been frequently before the courts for construction, and a number of the cases are collated in the case of Arbuckle Bros. v. Kirkpatrick, 98 Tenn., 321. In that case the contract under consideration was held to be a contract for sale, and not an agency or factor contract. A comparison of the Arbuckle Bros. contract with the contract we now have under consideration, much more clearly shows on its face that the contract here involved is one of sale rather than of agency, than the Arbuckle contract appears to be. In view of the elaborate citation of cases involving contracts similar to this, and where similar questions are made, set out and discussed in the case of Arbuckle Bros. v. Kirkpatrick, supra, we deem it unnecessary to again discuss the cases on this subject in this opinion, but think it sufficent that the cases theren discussed are referred to to support the conclusion that we reach that this contract is one of sale, and that the goods and implements, etc., shipped by the Harvester Co. to the Union Co. under this contract, constituted a sale of said goods, and that the same were not merely consigned to the Union Co.

The next question presented for our determination is the effect to be given to the clause or provision in the contract under Item 3 thercof wherein the title to all goods shipped under the contract, with right of repossession for default, is reserved by the company until the purchaser has made full payment in cash for all of said goods and for all notes given therefor. It will be observed that this retention of title clause is intended to apply to all goods sold and delivered by the Harvester Co. to the Union Co. under the contract. It is intended to cover not only the goods sold under the first order given at the time the contract was signed, but included all goods to be sold under the contract for the 1922 season. In order to make it a valid retention of title, under the con-

ditional sale laws of this State, the property in which the title is retained must be so described in the conditional sales instrument as to be susceptible of identification. Kenner v. Peters, 14 Thompson, 55; McDonald Auto Co. v. Bicknell, 129 Tenn., 493. The contract did not describe the property in which title was retained, except all goods to be shipped under the contract. This would probably be sufficient when applied to the implements and items designated in the order given at the time the contract was signed, but certainly it would not be a sufficient description of other implements, etc., to be ordered and shipped at a date subsequent to the execution of the contract by the parties.

It clearly appears that the goods to be shipped to the purchaser under this contract, were intended to be resold by the dealer in regular course of trade. The Farmers Union Co. was engaged in a retail business, and all the implements and goods delivered to it by the Harvester Co. under the contract was for the purpose of resale by the Union Company. We think it well settled that a conditional sale of goods, of whatever kind, to a retail dealer, where it is understood and known that such goods are to be resold by the dealer to its customers in regular course of trade, that the contract, insofar as it attempts to retain tile in such goods, is void. Manufacturing Co. v. Nordaman, 118 Tenn., 384; McCollum, Trustee, etc., v. Jones, 150 Tenn., 492; Morgan Bros. v. Dayton Coal Co., 134 Tenn., 228, and cases cited.

It follows, we think on principles of reason, that if the contract is one of sale and not of agency; and the goods sold and delivered under said contract, are sold to a retail merchant for the purpose of a resale in due course of trade to the customer of the merchant purchaser, and the provision by which the seller attempts to retain title is void for the reasons above stated, then the sale becomes absolute and not within the perview of the conditional sales law, and the absolute title to such goods vested in the purchaser under the contract. In Manufacturing Co. v. Nordman Co., supra, it was said: ''The question presented is whether there can be a lawful conditional sale to a retail merchant of goods to be resold in and for the purposes of, and in prosecution of his business; that is to say, there be a lawful retention of title under such a state of facts, or is this inconsistent with the nature of a sale made under the circumstances stated.'' In answering this question the court said: ''A conditional sale of personal property as understood in this State, means one in which the title is retained by the vendor, with no right in the vendee to sell the property.'' (Citing numerous authorties and cases.)

The original petition of the Harvester Co. filed in this cause predicates its claim of preference on eleven promissory notes set

out and described in the petition, aggregating the sum of $2590.33, and an open account in the sum of $46.51, and for attorneys fees and interest provided in the notes. It is alleged in the petition "that all of said notes were executed by said Farmers Union Co. to it, in payment of, and retained title in the vendor, to the following personal property, to-wit:" and then lists a number of items and implements, and further alleges that a number of the articles are still on hand and in the warehouse of said Farmers Union Co. at Jonesboro. The amended petition of the Harvester Co. filed in the cause, alleges that at the time of the filing of the general creditors bill and the appointment of the receiver, the Farmers Union Co. had in its possession certain property, farming implements, etc., belonging to petitioner, and alleged that all of said property belonged to petitioner, and was taken over by the receiver, and had been sold by him in this cause. It is then alleged in the petition that all of said property "was shipped by petitioner to the defendant upon consignment and upon the filing of the bill in this cause was the absolute property of the petitioner and not the property of the defendant; that at the time said defendant Farmers Union Co. went into the hands of the receiver in this cause it had the right to repossess itself of all of said property so belonging to it and theretofore shipped to said defendant upon consignment, and now, not having done so, it has the right to trace and identify said property into the hands of the receiver and have the proceeds received therefrom applied to the payment of its debts as set forth in said (original) petition and to its full and entire satisfaction." In the amended petition, petitioner prays "that all of said property so belonging to it on the date of the filing of the bill in this case be decreed to it, or rather that petitioner be decreed the right of having all of the proceeds derived from property owned by it and in the possession of the defendant at the time of the receivership and sold by the receiver in this cause applied to the satisfaction of its debt against the defendant, as set forth in said original petition in full before any of said funds or proceeds from said property be applied to the payment of other debts of the defendant or turned into the general fund."

The several notes referred to are filed in the cause, and in these notes, respectively, it is provided: "It is expressly agreed that this note (with other notes) is given in full payment of the purchase price of ———— machine." This blank is filled in in each of the notes, and each of the notes covers one or more implements or machines.

It appears from the record and the evidence of the witnesses that these several notes in which there is a reservation of title contained to the respective implements or machines, for the purchase of

which the respective notes purport to be given by the Union Co., were executed long after the implements and machines had been received by the Union Co. on orders given under the contract. If these implements, etc., covered by the respective notes in which title is retained, had been shipped on consignment, and not sales made under the contract, there being no provision in the notes authorizing a resale of the property, we think the retention of title as provided in the notes would clearly come within the conditional sale law, and the seller would be entitled to repossess himself of the property, or in the event of a sale of the same by the receiver, the Harvester Co. would be entitled to a prior right over other creditors in the proceeds derived from the sale by the receiver to the extent of the debt. However, as above set out in this opinion, these implements, etc., were not consigned by the Harvester Co. to the Union Co. under the terms and provisions of the contract, but were sold to the Union Co. on the orders of the Union Co. given under the contract.

Appellants contend that for two reasons there was not a valid retention of title to this machinery sold by the receiver contained in the respective notes. The first insistence of appellants being that the notes do not sufficiently describe the property. Second, that under the conditional sale law in force in this State, title in the property can only be retained at the time the sale is made.

Section 3670A1 of Shannon's Code provides:

"In all conditional sales of personal property, wherein the title to the property is retained by the vendor, as security for the payment of the purchase money, such retention of title shall be illegal and invalid, unless evidenced by a written contract or memorandum, executed at the time of the sale."

If, as already held by us in this opinion, this machinery, etc., was sold at the time it was shipped and delivered to the Farmers Union Co., the absolute title vested in the Farmers Union Co. The taking of a title note from the purchaser at a subsequent date in closing up the account, and in which it is attempted to retain title, as though it were an original sale, we think, is contrary to the conditional sales law above quoted. We think it well settled in this State that a retention of title must be made in writing at the time the sale is made to bring it within the conditional sale statute, [section 3670A1, supra.] If it be conceded that the notes, respectively, contained a sufficient description of the property to meet the requirements of the law, and we think this exceedingly doubtful, we are of the opinion that there was not a valid retention of title contained in the notes, which notes purported to have been given for the purchase of property previously consigned to it, but which had, in fact, been sold and delivered to it under the contract of sale.

While it is insisted by able counsel for appellee in the excellent brief filed, that these notes were given for machinery, etc., consigned by appellee to the Union Co., we cannot assent to this insistence. It is insisted by appellee that these notes were given as a matter of book-keeping, and according to the provisions of the contract under which they had been shipped to the Union Co. We do not think this contention is supported by the record.

We are of the opinion that the learned Chancellor was in error in holding and decreeing that appellee was entitled to a preference superior to the claims of appellants in the funds arising from the sale of this machinery. We cannot concur in this holding of the Chancellor. We do not think this fund realized from the sale of the implements in question is impressed with a trust in favor of the Harvester Co., which would give to it superior rights therein to the other preferred creditors.

It results that the assignments of error are sustained, and the decree of the Chancellor, insofar as the same decrees a preferential right superior to the claims of appellants, is reversed, and the cause is remanded to the end that the decree of the Chancellor in the distribution of the assets, as modified by this opinion, may be carried out. Under this opinion we hold that appellee and appellants are entitled to participate equally and on the same basis in the fund involved on this appeal. Appellee will pay the cost of this appeal.

Heiskell and Owen, JJ., concur.