GENERAL MOTORS ACCEPTANCE CORPORATION v. GREENE
COUNTY UNION BANK.—95 S. W. (2d) 948.

Eastern Section.   March 28, 1936.

Petition for Certiorari denied by Supreme Court, July 3, 1936.

Swingle & Hardin, of Greeneville, for plaintiff in error.
Susong & Parvin, of Greeneville, for defendant in error.

PORTRUM, J.   The plaintiff, General Motors Acceptance Corporation, replevied one Pontiac automobile in the possession of the Greene County Union Bank, claiming title to the same and the right to possession under a trust receipt, hereinafter referred to. This car was originally delivered to the dealer, King Motor Company of Greeneville, Tenn., for display in the dealer's show room, and as we shall hereafter show, for sale, under the trust receipt. And the dealer having failed in business, the plaintiff seeks to reclaim the car under and by virtue of its receipt from the defendant, Greene County Union Bank, who had acquired the possession of the car under some arrangement not shown in the record. At the conclusion of the plaintiff's evidence, the trial judge directed a verdict in favor of the defendant, and therefore, it does not appear under what claim of right the defendant asserts ownership in the car. The

trial judge was of the opinion that this trust receipt was not voidable, but void ab initio, and he ruled accordingly. He held that the enforcement of the contract, trust receipt, was against the sound public policy of the state, basing his holding upon the line of cases holding conditional sales and chattel mortgages of goods sold for resale void as against public policy. Some of these cases are as follows: Star Clothing Manufacturing Co. v. Nordeman, 118 Tenn. (10 Cates), 384, 387, 100 S. W., 93; Bank of Cookville v. Brier, 95 Tenn., 331, 338, 32 S. W., 205; Mayer v. Catron (Tenn. Ch. App.), 48 S. W., 255, 257, and Sanders v. Farmers Union Co., 5 Tenn. App., 560, 572. Star Clothing Manufacturing Company v. Nordeman, supra, states the rule that a conditional sale of personal property means one in which title is retained in the vendor with no right in the vendee to sell the property, and in which the property is not subject to a debt of the vendee, and the foregoing characteristics of sale do not preclude the idea, however, of a very distinct interest in the vendee. And the case holds that these two characteristics are inconsistent with the sale made to a retail merchant of goods to be resold by him in the ordinary course of his business. The court then states that the retention of title under such circumstances is nugatory, as the goods belonged to the vendee and passed into the hands of its trustee in bankruptcy.

The distinction between a trust receipt and a conditional sales contract must form the basis of the inapplicability of the rule as laid down in these cases. If the distinction is unsubstantial and illusive, then the rule of public policy as defined in the aforementioned cases should be applied. And according to the holding in the Star Clothing Manufacturing Company Case, the rights of general creditors are superior to the vendor, and perhaps the vendee's title is perfect, for the court held the conditional sale nugatory.

Trust receipts are a species of security that have a comparative recent origin; they first came to the attention of the courts in 1872, or about that time, and were used by importers as temporary security for the payment of the goods imported. The courts recognized the utility of this species of security, and the essential requirements to perfect the security have been defined in the decisions of the courts. The manufacturers of automobiles have utilized the trust receipts in the financing and sale of automobiles, and the majority of the courts have sanctioned this new use of the trust receipts. The court has been cited to no reported case of the state courts of Tennessee dealing with this question, but the federal courts within the state have dealt with the question, and we have a reported opinion of the Circuit Court of Appeals for the Sixth District going up from the federal court of the Eastern District of Tennessee, Hamilton Nat. Bank v. McCallum, 58 F. (2d) 912, in

which it is held that the receipt is binding and creates a superior lien to that of general creditors or the bankrupt's trustee's lien acquired upon the adjudication in bankruptcy. This case will be discussed later; the court desiring first to set out the bill of sale and accompanying trust receipt.

The Pontiac Motor Company, manufacturers, executed a bill of sale to the car in question, reading in part as follows:

"Know all men by these presents, that the undersigned for valuable consideration does hereby grant, sell, transfer and deliver unto the General Motors Acceptance Corporation, the motor vehicle described above: To have and to hold all and singular the said goods and chattel to said grantee, its successors and assigns. . . ."

To obtain possession of this car, the dealer, King Motor Company, executed a trust receipt to the General Motors Acceptance Corporation reading as follows:

"Received of General Motors Acceptance Corporation the motor vehicle described above.

"I (we) hereby acknowledge that said motor vehicles are the property of the said General Motors Acceptance Corporation, and agree to take and hold the same, at my (our) sole risk as to all loss or injury, for the purpose of storing said property; and I (we) hereby agree to keep said motor vehicles brand new and not to operate them for demonstration or otherwise, except as may be necessary to drive said motor vehicles from freight depot or from above city to my (our) place of business with all due care at my (our) risk en route against loss and damage to said motor vehicles, persons or property, and except as I (we) may be allowed by you in a special case to use the same for demonstrating upon our compliance with the conditions expressed in your instructions to us, and return said motor vehicles to said General Motors Acceptance Corporation or its order upon demand at any time and for any reason; and pay and discharge all taxes, encumbrances and claims relative thereto. I (we) hereby agree not to sell, loan, deliver, pledge, mortgage, or otherwise dispose of said motor vehicles to any other person until after payment of all amounts shown on dealer's record of purchase and release of like identification number herewith. I (we) further agree that the deposit made of amounts shown on the dealer's record of purchase and release of like identification number herewith. I (we) further agree that the deposit made by me (us) in connection with this transaction, may be applied for reimbursement for any expense and/or loss incurred by General Motors Acceptance Corporation, in the event of breach of this trust or the repossession of said motor vehicles."

Originally these receipts were used to finance importation, and to secure drafts drawn for the payment of the goods. In case the

draft was not paid, the goods were reclaimed and sold to others, but in the financing of automobiles notes are given, and if the automobiles are reclaimed, there is no provision made in reference to the payment of the note, or its surrender. This creates an inconsistency with the theory upon which the trust receipt was originally based. We have found no case discussing this distinction between the original purpose of the trust receipt and the new purpose for which it is now used. However, it seems that if the automobiles are reclaimed under the receipt, there would remain no consideration for the note, since there is no provision, and it was not contemplated that the property would be sold to the account of the dealer, as is the rule in conditional sales contracts and in the enforcement of liens. If the contract is to be maintained, it should be maintained in its entirety, and if the holder of the trust receipt reclaims the automobile, it should not have clear title to the automobile and at the same time hold and enforce the note given for it. Therefore, its claim to the automobile is in the nature of a lien securing the obligation.

As heretofore stated, this species of lien is new, and the courts have taken a wide range in discussing it in an attempt to classify it. The cases are almost exclusively federal cases arising in bankruptcy courts. We have not found any dealing with the claim of an innocent purchaser of a car from the dealer. The suits are contests between creditors. The federal court of New Mexico gives the trust receipt the status of a bailment. In re Otto-Johnson Mercantile Co. (D. C.), 52 F. (2d), 678. And in Ohio it is that of a conditional sale. In re Collinwood Motor Sales, Inc. (C. C. A.), 72 F. (2d), 137. In Arkansas, because of a state statute, it has the status of a conditional sale and is good against an innocent purchaser. People's Loan & Inv. Co. v. Universal Credit Co. (C. C. A.), 75 F. (2d), 545. A case, In re James, Inc., 30 F. (2d), 555 (C. C. A. 2) construes the General Motors Acceptance Corporation trust receipt, and distinguishes trust receipts from pledges, chattel mortgages, conditional sales, etc. To review or quote from this holding would require an extended space; it is necessary to read the case in its entirety to grasp and comprehend these distinctions. The doctrine of the trust receipt is succinctly stated by C. T. Fredericks in an article published in 22 Columbia Law Review, 393, et seq., wherein he states:

"The only situation in which a trust receipt may properly be used is one in which the title to the property by way of security is conveyed to the creditor by an owner who is not the person responsible for the satisfaction of the obligation which the property secures, but where such obligor has the contractual or beneficial interest in the property subject to the satisfaction of such obliga-

tion. The creditor may then deliver the property to the obligor who has hitherto had neither title nor possession thereof against appropriate trust receipt. The rights of the creditor in the property will be protected to the extent of the special trust receipt doctrine. In practice the trust receipt situation exists only in connection with advance for purchase of goods, by way of payment of draft against the bill of lading.

"The trust receipt should never be used in connection with the delivery of property pledged or mortgaged by the person signing the trust receipt."

For a fuller treatment of the trust receipt see note, 49 A. L. R., 282, and 87 A. L. R., 302. The first note is an annotation to the case of Canal-Commercial Trust & Savings Bank v. New Orleans, etc., Railway Co., 161 La., 1051, 109 So. 834, 839, 49 A. L. R., 274, and this case lays down this principle in reference to the trust receipt:

"When a pledgee of negotiable securities, holding them as collateral security for the pledgor's debt, returns them to the pledgor temporarily, on a trust receipt, he takes the risk only that third persons may, in good faith, and to his prejudice, deal with the holder as the apparent owner of the securities, but he does not thereby forfeit the pledge to other creditors of the pledgor."

It is said that this holding was a dictum, but it was based upon the case of Clark v. Iselin, 21 Wall. 360, 22 L. Ed., 568, wherein it is held that money collected upon pledge property is the specific property of the creditor.

If this holding is sound and applicable to a trust receipt, then there arises a distinction between a trust receipt and a conditional sale under the laws of this state. Innocent persons are protected as well as creditors dealing upon the face of the property in the hands of the apparent owner. And these persons being protected, the public policy of this state is not violated as in case of an attempt to retain title in goods to be placed in stock for resale. And this fact distinguishes this case from the Tennessee cases hereinabove cited.

We see no reason why the parties should not be allowed to utilize this species of security so long as the interest of innocent third parties are not jeopardized. And such a holding harmonizes and does not conflict with the federal case dealing with trust receipts going up from Tennessee. This is the case of Hamilton National Bank v. McCallum (C. C. A.), 58 F. (2d), 912, decided by the Sixth Circuit. The holding is well stated in the headnotes, which for convenience sake are set out herein:

"Bank and finance company taking trust receipts in financing

dealer's purchase of automobiles held entitled to status as secured creditors on dealer's bankruptcy.

"The automobiles were shipped consigned to manufacturer with sight draft, bill of lading, and order to notify bankrupt, sent to bank or finance company. Upon notice, bankrupt dealer's secretary-treasurer would execute collateral form note, and finance company would deposit check to bankrupt's credit. The bankrupt would execute trust receipts reciting that automobiles were received as agent or bailee, and there was an agreement that the bankrupt's secretary-treasurer would represent the creditors and see that the cars were not sold by the bankrupt and that payment was made on the appropriate note. When used cars were taken in exchange, trust receipt was executed thereon to creditor which financed purchase of new car.

"That agent of creditor financing by trust receipts bankrupt dealer's purchase of automobiles delivered bill of lading to bankrupt held not to defeat security title."

Where dealer giving trust receipts on automobiles had authority to sell on time or for part exchange, proceeds of cars sold, whether money or property, became property of holders of trust receipts.

. Hicks, J., filed a dissenting opinion, based principally upon his construction of the statutes requiring registration for like securities, Code, section 7192: "Personalty; Mortgages of, to be in writing, etc.—All mortgages and trusts of personalty shall be in writing, acknowledged and registered as hereinafter provided, to be valid against the creditors of the bargainor, or purchasers under him for value, and without notice."

The learned judge was of the opinion that a trust receipt fell within the classification of "Trusts of personalty." The court at this time is not required to apply this statute because mortgages and like securities which are required to be registered are nevertheless good between the parties, and as far as this record shows the contest is between the holder of the trust receipt and a third party whose title is not shown, and who may be standing in the shoes of the dealer.

The court is of the opinion that a trust receipt as between the parties is not void, and the defendant not having shown that it was an innocent holder for value and without notice, or advanced credit upon the faith of the goods, it is in no position to insist upon a judgment in its favor, upon this state of the record. The trial court erred in directing a verdict at the conclusion of the plaintiff's testimony, and the case will be reversed and remanded for a new trial.

The plaintiff in its pleading designated this receipt as a conditional sales contract, and the defendant insists that it is ju-

dicially estopped to deny that the contract is a conditional sales contract. We think this a mistake in judgment of what the law is, and is not binding as a judicial estoppel.

The defendant in error will pay the cost of the appeal, the cost of the lower court will abide the final result.