**In the Matter of CHEROKEE ASPHALT PAVING COMPANY, Inc., Bankrupt.**

**No. 18399.**

United States District Court
E. D. Tennessee, N. D.,
at Knoxville.
Jan. 3, 1961.

R. Arnold Kramer, Knoxville, Tenn., for trustee.

Ivan T. Privette, Knoxville, Tenn., for Story Bros., Inc.

ROBERT L. TAYLOR, District Judge.

This proceeding is before the Court on the petition of Story Brothers, Inc., for

review and reversal of the Referee's Order dated October 20, 1960, sustaining the objections of the Trustee to the allowance of petitioner's claims Nos. 65 and 66 as secured claims.

The controversy stems from two conditional sales contracts executed by Cherokee Asphalt Paving Company, Inc., hereinafter referred to as Bankrupt, and Story Brothers, Inc., hereinafter referred to as Story, dated March 5, 1958 and December 22, 1958, together with two notes executed by the Bankrupt on those dates payable to Story.

The first conditional sales contract dated March 5, 1958 was given to secure a note in the principal amount of $12,366.59 payable at the rate of $515.38 per month and representing the balance due by the Bankrupt to Story on a white asphalt plant that was conditionally sold to Bankrupt on that date. A cash payment for the plant was made by the Bankrupt in the amount of $2,760.40.

A second conditional sales contract dated December 22, 1958 secured the balance due on a note in the principal amount of $13,440 payable in monthly installments of $560 each, representing the balance due on a 75 AG Michigan tractor shovel conditionally sold by Story to the Bankrupt on that date. A cash payment of $2,111 was made by the Bankrupt on the shovel.

The notes and conditional sales contracts were sold by Story to the Fountain City Bank of Knox County, hereinafter referred to as Bank, with recourse on Story.

In November, 1959, the Bankrupt was unable to meet the payments on the notes to the Bank, and the Bank demanded payment.

On November 27, 1959, Story and the Bankrupt executed a purported conditional sales contract covering the aforementioned asphalt plant together with note of the same date for $5,315 payable to Story in seventeen monthly installments of $295.27. On the same date of November 27, 1959, another purported sales contract was executed by the same

parties covering the abovementioned Michigan tractor shovel together with a note of the same date for $9,746.06 payable to the order of Story in seventeen equal monthly installments of $541.55.

The foregoing purported conditional sales contracts and notes were assigned by Story to Associates Discount Corporation, hereinafter referred to as Discount, on November 27, 1959, with recourse against Story, and, on the same date, Discount issued its two checks to Story for $8,588.60 and $4,682.82, for a total of $13,271.42.

On November 30, 1959, or three days after the purported conditional sales contracts were assigned by Story to Discount, Story issued its check to the Bank in the amount of $13,271.42, the exact amount received by Story from Discount.

The Story check was cashed by the Bank on December 1, 1959 and on December 17, 1959 the Bank mailed the notes and the two 1958 conditional sales contracts to the Bankrupt.

No additional funds were advanced to the Bankrupt by either Story or Discount and any additional amounts shown in the notes to Story which were endorsed to Discount represent finance charges and interest.

The foregoing facts were stipulated. The parties also stipulated that Ray Harris, Secretary-Treasurer of Story, R. L. Hatmaker, Vice President and Manager of the Bankrupt, and W. D. Hunt, President of the Bankrupt, if called upon to testify as witnesses would testify, and the stipulation may be treated as if they had been called and testified, as follows:

That when the Bankrupt became unable to meet its payments to the Bank, Hunt and Hatmaker requested Story to work out a plan whereby the Bankrupt's payments on said equipment could be reduced and the time for payment extended; that Harris agreed to attempt to work out the matter for the Bankrupt and did so by means of the execution of the aforementioned purported conditional sales contracts and notes dated November 27, 1959; that it was never under-

stood by any of them that the execution of these documents and the payment of the sum of $13,271.42 to the Bank constituted a payment of the obligation of the Bankrupt; that none of them intended by these transactions to deprive Story of its retained title as security for payment of its indebtedness; that Story did not intend to give up its security but intended to retain the title to the equipment until all of the purchase price was paid in full; that said transactions were intended merely as a method of reducing the monthly payments of the Bankrupt on the equipment and extending the time for the payment of the purchase price on said equipment; that the said Hunt and Hatmaker have no recollection of having received the conditional sales contracts and the notes which the conditional sales contracts secured from the Bank after they were mailed on December 17, 1959 and do not remember having seen them since; and, that they did not understand that the retained title on said equipment had been given up by Story.

It was further stipulated that after Discount filed its claims on the contracts and notes which are filed as Exhibits "C" and "D" to the stipulation, and after objections to the claims were filed by the Trustee, Discount called upon Story to repurchase said contracts and notes and thereafter Story repurchased the same by paying Discount the sum of $4,968.54 for the note and contract relating to the white asphalt plant and the sum of $8,995.70 for the note and contract relating to the Michigan tractor shovel; that Discount executed to Story an assignment of both of said claims, the assignment having been filed in the bankruptcy proceeding. That portion of each claim which sought attorney's fees was abandoned.

It was also stipulated that subsequent to December 22, 1958—this being the date of the second conditional sales contract executed by the Bankrupt to Story—and prior to November 27, 1959—this being the date that the two purported conditional sales contracts and notes were executed—the Bankrupt incurred debts which were still owing and unpaid at the time it was adjudged a bankrupt, to-wit, on December 21, 1959.

The Referee held, in a thorough and carefully prepared memorandum opinion, that the 1959 purported conditional sales contracts executed by Story and the Bankrupt, each of which was designated as a "Retail Installment Contract", were invalid under Tennessee law as conditional sales contracts since they were not executed at the time the equipment was sold and the notes which said contracts purported to secure were not renewals of the original notes and contracts.

The Referee reasoned that when Discount filed its claims it never asserted security based upon the 1958 documents; that Discount assigned to Story its rights, title and interest to said claims on June 21, 1960 and Story took the claims subject to the same burdens of the original creditor, Discount; and, that since Discount was not permitted to assert that the 1959 documents were renewals, Story should not be permitted to do so.

The effect of the holding of the Referee was that the claims of Story could rise no higher than Discount and that the rights of both parties were fixed at the time the bankruptcy petition was filed, and since Discount, in filing its claim, did not rely upon the 1958 documents as security, Story could not do so.

Certain principles governing conditional sales contracts in Tennessee were stated by the Referee with which this Court is in accord.

Title cannot be retained unless evidenced by a written contract or memorandum executed at the time of sale. T.C.A. § 47–1301. Sanders v. Farmers Union Company, 5 Tenn.App. 560.

If a note is executed in conjunction with a retention of title contract, such note may be renewed from time to time without destroying the conditional seller's rights in the retention of title contract. Williamson Bros. v. Daniel, 21 Tenn.App. 346, 110 S.W.2d 1028.

Conditional sales contracts are out of harmony with the policy which underlies the Tennessee registration laws. Star Clothing Manufacturing Co. v. Nordeman, 118 Tenn. 384, 100 S.W. 93.

■ The conditional seller is required to strictly observe the statute in repossessing the property. International Harvester Co. v. Farmer, 174 Tenn. 88, 123 S.W.2d 1089.

■ A conditional seller cannot retain title after he has parted with the title, particularly where the rights of third parties are involved. Taylor v. Ressler Lumber Company, 20 Tenn.App. 218, 97 S.W.2d 445.

■■ To the foregoing may be added the rule that a bankruptcy court is a court of equity. An old maxim is that equity looks at the substance of things rather than the form. We believe that this maxim of equity is applicable to this case.

■ We start with the proposition that the conditional sales agreements executed by the Bankrupt in 1958 and the notes which they secured were valid retention of title instruments under the laws of Tennessee. This fact is not challenged by the Trustee. These contracts were negotiated by Story in the regular course of business to a commercial bank in Knoxville, and the Bank required Story to endorse the notes with recourse against Story. When Story endorsed the notes with recourse, Story became secondarily liable to the Bank for the payment of the same. Soon thereafter, the Bankrupt became financially involved to the extent that it could not meet the payments on the notes in the regular course of business. The Bank then called upon Story for payment. The money for payment to the Bank was raised by the execution by the Bankrupt of additional notes, which contained retention of title provisions, and which were transferred by Story to Discount with another recourse endorsement of Story thereon.

The transaction was worked out for the benefit of the Bankrupt. The Bankrupt needed more time to meet the payments on its indebtedness that was secured by the conditional sales contracts covering the equipment which it purchased from Story and which it was using in its business. The Bankrupt presumably thought, as do many people who get into financial trouble, that if given time it could eventually work out of its financial troubles. Story was willing to go along presumably for a dual-purpose, first, to help the Bankrupt and at the same time to try to help itself.

Subsequent events showed that the hopes of the Bankrupt were not realized and that the plans of Story were frustrated when the bankruptcy proceeding was filed.

The evidence in the record, which is represented by the stipulation, is that Story had no intention of releasing its original liens which were evidenced by the 1958 documents when it permitted the Bankrupt to execute the 1959 documents as a means of securing money from Discount to pay the Bank.

We do not believe that the creditors who extended credit to the Bankrupt during the period from December 22, 1958 until December 21, 1959, or the date of bankruptcy, were prejudiced by reason of the 1959 instruments because they extended such credit with at least constructive knowledge that the original 1958 conditional sales contracts were out-standing.

The Trustee contends that the intention of Story and the Bankrupt with respect to the 1959 documents in relation to the 1958 documents is not controlling; that the legal effect of the 1959 documents was not a renewal of the 1958 documents, but that the 1959 documents represented a new and different indebtedness of the Bankrupt; that the 1958 indebtedness, evidenced by the 1958 conditional sales contract was paid in full and that the money used in the payment came from Discount and that the signature of the Bankrupt on the purported 1959 conditional sales notes enabled Story to procure the money from Discount. This argument overlooks the fact that Story was secondarily liable under the 1959·

documents and also secondarily liable to the Bank under the 1958 documents and that the 1958 documents were valid conditional sales contracts which were never released or cancelled by Story.

The Trustee also argues that Discount's rights were based solely on the 1959 instruments and that the rights of Story can rise no higher than Discount's. This argument also overlooks Story's secondary liability on all of the instruments and that Story did not at any time give up its secured rights under the 1958 instruments.

The fact that the Bank mailed the 1958 conditional sales contracts and notes to the Bankrupt could not prejudice Story's rights. These documents should have been returned by the Bank to Story as they evidenced the secured indebtedness of the Bankrupt to Story. T.C.A. § 47–252.

The 1959 documents, standing alone, would not be valid as conditional sales contracts because they were not executed at the time the equipment was sold. This is conceded by Story. The 1959 documents must be considered in relation to the 1958 documents. The 1959 documents were executed by Story and the Bankrupt to allow the Bankrupt more time to pay the original indebtedness evidenced by the 1958 documents.

Although the 1959 documents were inartfully drawn, we do not believe that this should defeat Story's rights as a secured creditor. The equities of the case favor Story. It is recognized that equity must follow the law, but the Court knows of no principle of law that invalidates the 1958 conditional sales contracts in which Story is named as conditional seller and which have not been satisfied. We believe that Story is a secured creditor of the Bankrupt for the balance due under the 1958 notes secured by the 1958 conditional sales contracts.

In summary, the Court holds that Story is a secured creditor of the Bankrupt as evidenced by claims Nos. 65 and 66, originally filed by Discount and assigned to Story-on June 21, 1960.

The exhaustive record submitted by the Referee in this proceeding has been most helpful to the Court.

Present order in conformity with the views herein expressed.